## FREEMAN et al. v. HOPKINS et al.

Circuit Court of Appeals, Ninth Circuit.
May 6, 1929.

No. 5672.

James H. Longden, of Oakland, Cal., Geo. A. Hooper, of Los Angeles, Cal., and Resleure & Hill, J. F. Resleure, and Hunt C. Hill, all of San Francisco, Cal., for appellants.

Charles H. Lovell and Howell Lovell, both of San Francisco, Cal., for appellee Hopkins.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. Norman Lee Freeman, claiming to be an heir of Mark Hopkins, deceased, brought this suit for himself and in behalf of about 450 other alleged heirs, a list of whose names is exhibited with the bill. The object of the suit is to establish a trust in favor of all such heirs, in securities of great value which it is charged were the property of Hopkins at the time of his death and which are presently in the possession of the defendant banks. Generally it is alleged that the securities were fraudulently concealed from the knowledge of the court in the probate proceedings by the deceased's widow and his brother Moses Hopkins, who were successively administratrix and administrator of the estate, and who were the only beneficiaries named in the decree of distribution, which was entered while the latter was administrator. The two defendants other than the banks are joined apparently because of their alleged participation in the concealment and not because they have any control over the securities, or have ever claimed any interest therein. Sustaining defendants' motions, the court below entered a decree dismissing the suit, with prejudice, "because of laches on the part of plaintiff and for want of equity" in the bill.

Plaintiff sets forth his cause of action in three counts or forms, but for present purposes the few distinctive averments are thought to be negligible. It is represented that on March 29, 1878, Mark Hopkins, then

a resident of San Francisco, died intestate leaving a vast estate consisting of real and personal property; that his widow was duly appointed administratrix and acted as such from June, 1878, to December, 1881, on which latter date the deceased's brother, Moses Hopkins, succeeded to the trust and acted as administrator until the administration was closed in 1883. His final accounts were settled and a decree of distribution, a copy of which is exhibited with the bill, was entered November 1, 1883. Upon referring to the decree we learn that it was made by the superior court of the city and county of San Francisco, a court of record and general probate jurisdiction; that the administrator had prior thereto, to wit, on March 16, 1883, filed a full account and report of his administration and with the account a petition for the final distribution of the estate; and that thereupon the clerk had given notice of the settlement of the account and a hearing upon the petition as directed by an order of the court. At the hearing the court found that the administrator's accounts were correct; that all debts of the estate and expenses of administration had been paid; "that said estate is ready for distribution and in a condition to be closed;" and that the only persons then interested in the estate were the deceased's widow and his brother Moses Hopkins. Accordingly it was ordered that the accounts be approved, and decreed that all property therein particularly described "and other property not known or discovered which may belong to said testator in which the estate may have any interest be and the same is hereby distributed," three-fourths to the widow Mary Frances Sherwood Hopkins and one-fourth to the brother. In the decree there follows a description of money and divers securities, and, after reciting that the only two persons interested in the estate on September 4, 1879, namely the widow and Samuel F. Hopkins, had on that date agreed that all the real estate should be distributed to the widow, and that on March 13, 1880, Moses Hopkins and Samuel F. Hopkins had by deed conveyed all such real estate to the widow, it makes disposition of the estate accordingly and confirms the conveyance referred to. In passing it may be added that plaintiff is here claiming no interest in the real property of which the decedent was possessed, and hence we are not concerned with the validity of either the agreement or deed referred to, or that part of the decree of distribution.

It is further alleged in the bill that Mark Hopkins left surviving him, besides his widow and Moses and Samuel F. Hopkins, four brothers and three sisters, all nonresidents of California; that one of these sisters, Annie H. Russell, was plaintiff's grandmother; and that both she and her husband, as well as her daughter and her daughter's husband, plaintiff's parents, are dead. No one of these seven alleged brothers and sisters of Mark Hopkins is named in the decree of distribution, and it is averred that no one of them ever received any part of the property of the estate "through the law of descent and distribution from the administration of the said estate or otherwise."

It is further set forth that on or about the 10th day of July, 1925, the National Bank of D. O. Mills & Co. had in its vaults "several million dollars of personal property and assets of the said Mark Hopkins"; and that thereafter, as successor to that bank, the defendant California National Bank came into the control thereof; "and that it now retains and conceals the same or has knowledge of its whereabouts." Further, that on or about August 1, 1925, the defendant Wells Fargo Bank & Union Trust Company had "several million dollars of personal property and assets belonging to and standing in the name of Mark Hopkins"; and that thereafter custody of the same passed to the defendant Crocker First National Bank. In neither case is there any other or further description of such personal property or any showing of the source from which it came, or when the bank received it and from whom, or in what capacity the bank is claiming the right to hold it, or any other circumstance or mark of identification, except that probably we should infer no change has taken place in the form of the securities, from the averment that all of such "personal property, assets and money" were fraudulently hidden and concealed from the court by the administrator, Moses Hopkins, and withheld from the inventory so that the same would not be administered upon, and were in fact not covered by or included in the decree of distribution.

It is further alleged that Moses Hopkins continued to conceal these assets after the administration closed and up to the time of his death, the date of which is not shown, and that thereafter his friend and confidant, defendant Timothy Nolan Hopkins, and the latter's friend, the defendant Samuel Hopkins, carried forward such concealment up to the time of the commencement of this suit.

On the subject of knowledge and notice the only averment is as follows: "That this plaintiff did not have any notice, knowledge, or suspicion that there was any property or

assets not administered upon in the Mark Hopkins Estate nor any knowledge or suspicion of the fraudulent acts of concealment of the same until in July and August, 1925, while visiting in California, plaintiff through the vice-president of the National Bank of D. O. Mills and Company, at Sacramento, California, and through an officer of Wells Fargo Bank & Union Trust Company, at San Francisco, California, learned for the first time of the existence of personal property and assets belonging to and still standing in the name of the said Mark Hopkins and which had never been inventoried nor distributed in the said Mark Hopkins Estate." With the exception of formal matters and pure conclusions of law, we have thus disclosed the full showing of the bill.

█ In the absence of extrinsic fraud of a material character, generally a decree of distribution made by a probate court having jurisdiction constitutes an adjudication in rem and is binding upon all the world. There is here no question of jurisdiction. Neither in the complaint nor in appellant's briefs is there a suggestion that the state statutes failed to provide for adequate notice, that the order directing it was erroneous or defective in any particular, or that notice was not given as ordered. In so far as appears, plaintiff's ancestress, through whom he claims, had both constructive and actual notice of the hearing upon the petition. Upon the question whether she appeared, the bill is silent, but, assuming that she failed to appear, there is no averment, direct or indirect, that such failure was due to any act or omission on the part of the administrator or the beneficiaries. True it is alleged that the administrator willfully withheld from his inventory and reports to the court valuable personal assets, but, if in fact plaintiff's grandmother knew nothing of the administration, she, of course, knew nothing of the omission and could not have been influenced thereby, and if, on the other hand, she was cognizant of the probate proceedings, she knew that properties of great value were inventoried and were to be and were the subject of distribution. In so far as appears, the legal status of all properties, those exhibited by the probate records and those alleged to have been concealed, was precisely the same. To say that she refrained from asserting a claim of heirship to the valuable properties of which she knew merely because in fact there were other assets of which she was ignorant would be preposterous. Having due notice of the intention of the court to distribute the estate and close the administration, it was the duty of all persons having claims to assert them. The court's jurisdiction was not restricted to property inventoried or of which it otherwise had knowledge. Its right and duty was to determine to whom the residue of the estate, the unknown as well as the known property, belonged, and to decree its distribution accordingly. In such a proceeding plaintiff's ancestress could in no wise be prejudiced by reason of the administrator's alleged concealment. If she had appeared and established heirship, the decree would have defined her share in and established her right to all the property of the estate whether known or unknown. Appropriately such was the form of the decree actually entered.

By section 1666 of the California Code of Civil Procedure, it is provided that: "In the order or decree [of distribution], the court must name the persons and the proportions or parts to which each shall be entitled. * * * Such order or decree is conclusive as to the rights of heirs, legatees, or devisees, subject only to be reversed, set aside, or modified on appeal." With this requirement the probate court complied. It specifically adjudicated that the widow and Moses Hopkins were entitled to all the personal property of the estate, and defined their several portions. And it is noteworthy that nowhere in the bill is it alleged that any other person owned or was then entitled to any part of the estate. True, plaintiff's ancestress was a sister of the deceased and as such an heir at law, but she may have conveyed her interest or otherwise relinquished her right prior to the filing of the petition for distribution.

It must therefore be held that the alleged concealment in no wise prevented plaintiff's grandmother from procuring an adjudication of her claim, if any claim she had, and was not a material extrinsic fraud such as would warrant a court of equity in setting aside or ignoring the decree upon the petition of plaintiff. He frankly admits that he has been unable to find any decision holding that, the proceeding being otherwise regular, such a concealment operates to nullify the decree. The cases thought by him to be most nearly in point are readily distinguishable. In Morgan v. Asher, 49 Cal. App. 172, 193 P. 288, where the executrix was charged with fraudulent concealment, the court stressed the fact that for some time prior to her husband's death she had been intrusted by him with the exclusive custody and control of his property. But aside from that consideration, under the terms of the will the whole of the estate was to go to the widow if its value was not in excess of $80,000, and hence the leg-

acies to the plaintiffs were defeated by the concealment of the greater part of the assets, leaving an apparent estate of less than $80,-000. Had the facts been known to the probate court, it would undoubtedly have decreed to plaintiffs the amounts specified in the will. The fraud was of controlling importance. Here knowledge of the property alleged to have been concealed could have had no possible bearing with the court upon the question of who were entitled to distributive shares, and, the court having found that the widow and Moses Hopkins alone had interests, the alleged concealment became wholly immaterial. In Silva v. Santos, 138 Cal. 536, 71 P. 703, defendant had been guardian of the property of plaintiff, an incompetent person. Two days after the latter's restoration to competency, defendant filed his account and within 12 days obtained its approval and his discharge. He had fraudulently withheld from the account some of his ward's property. It was said that by reason of this circumstance and the fact that otherwise plaintiff would be left without remedy the case appealed strongly to the conscience of the chancellor, and a court of equity had the power to require the defendant to account for and turn over the property he had thus fraudulently withheld from his report and which admittedly belonged to plaintiff. Simonton v. Los Angeles Trust & Savings Bank, 192 Cal. 651, 221 P. 368, involved a controversy over certain specific property, between the devisees of Jane Simonton and the children of G. W. Simonton, her deceased husband, by a former wife. By his will G. W. Simonton had left absolutely to Jane Simonton one-half of his estate, all of which was community property, and the other half to her during her life with remainder over to his said children. There were no specific devises. Jane Simonton was named as executrix and by her the estate was administered. The decree of distribution was strictly in accordance with the terms of the will. Thereafter Jane Simonton died, and the executor returned and there were distributed to her heirs divers items of property claimed by her executor as her separate property, but which G. W. Simonton's children contended were a part of his property at the time of his death. This property they claimed was by Jane Simonton as executrix fraudulently withheld from her inventory and from administration in that estate.

The suit was brought by the children to establish their interest under their father's will. Manifestly they were not bound by any orders or decrees in the matter of Jane Si-

monton's estate, for they were in no sense parties to that proceeding. In the estate of G. W. Simonton the decree of distribution awarded to them a one-half interest in the residue of the property, subject to the widow's life estate, and such also were the terms of the will. Their contention that certain specific property was part of their father's estate was therefore not inconsistent with either the will or the decree of distribution. If in respect to this property the decree was effective for any purpose, it operated to establish their right and left open only the question whether the property was a part of the estate, a question for a court of general jurisdiction. In arguendo, expressions were used by the court to the effect that concealment of property may constitute extrinsic fraud, but nowhere is there any intimation that such fraud can be invoked by one who upon due process has been adjudicated to be without interest. To Pickens v. Merriam (C. C. A.) 242 F. 363, this last comment is equally applicable. And besides in that case the administratrix had, by fraudulent concealment and false representations, procured, for an inadequate consideration, assignments from the other heirs, of their interests. That was clearly extrinsic fraud, for by the deceit she disabled such other heirs, or induced them to refrain, from asserting their rights in court. Barber v. Superior Court, 43 Cal. App. 221, 184 P. 952, involves an administrator's account and not the effect of a decree of distribution.

Upon the subject of laches it is to be noted that this suit was not commenced until February 25, 1927, almost 49 years after Mark Hopkins died and more than 43 years after the administration of his estate closed. Clearly, we think, to avoid the charge of laches after such a lapse of time, much more should be required than the vague, meager allegations of the bill touching the alleged concealment and the discovery of the alleged fraud. We have scarcely more than the bald statement that Moses Hopkins, and later his friends, concealed properties, and that recently plaintiff accidentally discovered their existence. Where were the assets during the administration, how or by what acts were they concealed, and when and under what circumstances did plaintiff make the discovery? And what did he discover—was it a fact or a legal theory? In Robertson v. Burrell, 110 Cal. 568, 42 P. 1086, the Supreme Court of California used this language: "Moreover, after the lapse of so much time, and after the death of all the original parties, equity, for the peace of society, scru-

tinizes with great particularity bills such as this, and is not satisfied to retain one unless the fullest possible credible showing is made by the applicants for relief. Bills v. Mining Co., 106 Cal. 9, 39 P. 43; Chapman v. Bank, 97 Cal. 155, 31 P. 896; Felix v. Patrick, 145 U. S. at page 333, 12 S. Ct. 862 [36 L. Ed. 719]; Wood v. Carpenter, 101 U. S. 135, at page 143 [25 L. Ed. 807]. It is not sufficient, therefore, to allege ignorance at one time, and discovery at another. The facts and circumstances must themselves be pleaded, in order that the court may determine whether the sources of knowledge at last availed of were not at all times open to plaintiffs, whether they were negligently overlooked, whether other circumstances should not earlier have put plaintiffs upon discovery, what was the nature of the concealment practiced, whether it consisted in mere silence, or was accompanied by active misrepresentation and fraudulent deception." See, also, Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807. In Hammond v. Hopkins, 143 U. S. 224, 252, 12 S. Ct. 418, 427 (36 L. Ed. 134), the court quotes with approval from Badger v. Badger, 2 Wall. 87, 95, 17 L. Ed. 836, the following excerpt: A party seeking to avoid laches "should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim; how he came to be so long ignorant of his rights, and the means used by the respondent to fraudulently keep him in ignorance; and how and when he first came to a knowledge of the matters alleged in his bill; otherwise the chancellor may justly refuse to consider his case, on his own showing, without inquiring whether there is a demurrer or formal plea of the statute of limitations contained in the answer."

Under the statute of California (Code Civ. Proc. § 338, subd. 4) an action for relief must be brought within three years after discovery by the aggrieved party of the facts constituting the fraud. Of the application of this provision the Supreme Court of the state has said: "The right of a plaintiff to invoke the aid of a court of equity for relief against fraud, after the expiration of three years from the time when the fraud was committed, is an exception to the general statute on that subject, and cannot be asserted unless the plaintiff brings himself within the terms of the exception. It must appear that he did not discover the facts constituting the fraud until within three years prior to commencing the action. This is an element of the plaintiff's right of action, and must be affirmatively pleaded by him in order to authorize the court to entertain his complaint." Lady Washington Consol. Co. v. Wood, 113 Cal. 482, 486, 45 P. 809, 810.

While federal courts of equity are not bound by state statutes of limitations, they are under ordinary circumstances guided by them, and the lapse of the period so prescribed raises a presumption that the claim is stale. Benedict v. City of New York, 250 U. S. 321, 39 S. Ct. 476, 63 L. Ed. 1005; Boynton v. Haggart (C. C. A.) 120 F. 819, 830; Broatch v. Boysen (C. C. A.) 175 F. 702, 707.

But if we should assume that the general averments would be sufficient, were plaintiff an immediate heir, the bill must be held fatally defective upon another ground. Plaintiff claims through his mother and his grandmother. If the latter's right was barred, it did not revive upon her death. Plaintiff alleges that he had no knowledge prior to 1925. That may very well be. His age is not disclosed, but it is not improbable that he was born long after the administration closed. Neither directly nor indirectly does he allege that his mother or grandmother, or any other relative of Mark Hopkins living at the time of the administration, was without full knowledge.

Affirmed.