## PUTNAM v. CITIZENS' NAT. TRUST & SAVINGS BANK OF LOS ANGELES.*
### No. 7520.

Circuit Court of Appeals, Ninth Circuit.

April 22, 1935.

William A. Monten and Charles C. Montgomery, both of Los Angeles, Cal., for appellant.

Paul J. Otto, F. J. O'Neil, and John N. Cramer, all of Los Angeles, Cal., for appellee.

Before WILBUR and GARRECHT, Circuit Judges, and CAVANAH, District Judge.

CAVANAH, District Judge.

Josephine Phelps Putnam, a daughter of William Howe Phelps, deceased, and a bene-

*Rehearing denied May 22, 1935.

ficiary of the testamentary trust created by the will of the deceased, brings this suit against appellee, Citizens' National Trust & Savings Bank of Los Angeles, executor of his estate, charging that appellee had fraudulently and unlawfully commingled other assets with the assets of the estate in such a way that only by an accounting in equity could the assets of the estate be marshaled, and for damages. The appeal is from a decree of dismissal on appellee's motion to dismiss and presents the issues: First, lack of jurisdiction of the subject-matter of the bill; and, second, failure of the bill to state a cause of action, and for want of equity.

Jurisdiction of the federal court is predicated upon the theory of extrinsic fraud in obtaining an alleged erroneous order of the state superior court by appellee as executor in settling its first account current. The inquiry then is: Do the facts presented by the bill present a case of extrinsic fraud within the rule conferring jurisdiction of the federal court of the subject-matter involved? The relief prayed for in the bill relates to the probate administration of the estate of William Howe Phelps, and asks that the order of the state superior court of December 22, 1930, settling the first account current of the executor be held for naught; that appellee be required to make its account current and report ab initio and de novo; that the court review the entire proceeding and the administration of appellee as executor ab initio, that it be required to account to appellant for all its acts and conduct in the management of the estate's property; that appellee restore and pay to the estate what shall appear upon the taking of the account to be due from it to the estate, and pay into the estate the amount of the Handley note for $1,750, and cancel its mortgage note for $27,500; to restore secret payments made unto Kirsch and Griffiths and account for its profits, if any, by it made on the sums alleged to have been embezzled and make such other restitutions as upon the taking of the account and discovery of other losses, if any, shall appear; to find damages which the estate has suffered by unlawful augmentations, and that the estate recover from appellee $100,000 damages and its account be surcharged therewith and appellee be enjoined and restrained from proceeding in the probate court on its second account current and for general relief.

The bill is voluminous and generally it is averred that William H. Phelps died August 14, 1927, in Los Angeles, of which he was a resident and left surviving him, his widow Laura B. Phelps, two minor sons and two minor daughters and plaintiff born June 23, 1908, and that he left in California, subject to his testamentary disposition, estate consisting of real and personal property. In his will he bequeathed a cash legacy to his widow of $5,000 and all his personal household furniture and furnishings, diamonds, and keepsakes and the remainder of his estate to appellee in trust, for the use and benefit of his widow and children in the proportions and subject to the terms set forth in the will. On September 13, 1927, appellee was appointed executor of the estate. In its petition for letters testamentary it estimated the total value of the estate at $541,981, with an estimated monthly income of $1,764.10, and described as property belonging to the estate, real estate which in truth belonged separately to appellant's mother and placed a value thereon of $281,500 and an estimated monthly income of $900 therefrom; that appellee's officers thereafter discovered that property listed in its petition did include property belonging to appellant's mother and thereupon by fraud and misrepresentation procured appellant's mother to deed and assign to the heirs and devisees of William H. Phelps, subject to the administration of the estate, said separate real properties, and a trust deed note of the value of $2,750 belonging to appellant's mother; that the proceedings in the administration of the estate were based upon the unlawful augmentation thereof by inclusion of property of appellant's mother; that the mother of the appellant was incompetent to exercise independent judgment or transact any business by reason of her deaf mute condition and lack of business experience and therefore was subject to the control and influence of the appellee; that appellee, occupying a fiduciary relation toward appellant's mother as executor and trustee under the will, falsely represented to her that in order to take according to the terms of the will, she should and must waive her rights and quitclaim her interest to the properties to the heirs and devisees of her husband; that appellee, when it made the false representations, intended to augment its ordinary and extraordinary fees as executor to which it would have been entitled to the extent that the values of the property sought to be quitclaimed and to increase the amounts which appellee could charge for its services; that to gather within the corpus of the estate properties of the appellant's mother would, in effect, add to the security of a $27,500

mortgage in favor of the bank which decedent and appellant's mother had given on one of the properties; and that, by reason of the inclusion of the mother's property in the estate, it has greatly damaged the estate and the mother's interest. It is further alleged that the appellee has delayed the period of administration for more than six years and has negligently permitted buildings and lots of the estate to remain vacant and failed to make sales of them, and has unlawfully paid out money belonging to the estate for expenses, debts, and liabilities by reason of properties of her mother's being administered with the property of the estate and diverted thereby from the estate funds, which would have kept it in good standing, and has unlawfully paid the widow's allowance for an unreasonable length of time and has negligently and fraudulently paid appraisers' fees and unlawfully paid to itself excessive executor's fees and attorney's fees and has willfully and unlawfully invested moneys of the estate in mortgages without leave or knowledge of the court, instead of using the assets for the reduction of debts and expenses of administration. Other acts of misfeasance and nonfeasance of appellee as executor are alleged and advice given to appellant and her mother by attorney for appellee concerning their rights and procedure necessary to be taken in the administration of the estate and in which he represented appellant, her mother, and appellee and did not inform them of his dual or triple capacity as attorney; that appellant and her mother were advised by said attorney that appellant was a minor and incompetent under the laws of California to administer the property and would continue to be until she attained her majority on June 23, 1929; and that it was necessary to have a guardian of her estate and person appointed and that thereupon presented to her for her signature with a brother and sister, nomination of her mother as guardian, which was signed and delivered to the attorney. Thereafter the attorney appeared for appellant in the guardianship proceedings and her mother was appointed as her guardian; that the attorney for the parties continued advising appellant and her mother on various occasions in regard to steps taken in the probate proceedings and as to their interest in the estate until in the fall of 1931, when she consulted one of her present attorneys. It is further alleged that the attorney did not, either before or after the attainment of appellant's majority, advise her that the conveyance by her mother to the estate was fraudulently procured, but on the contrary he falsely advised her and her mother that it was necessary for her mother to make said conveyance if she would take under the will, and that the management of the separate properties together with the estate would be for the benefit of her mother and herself. In regard to these representations, it is alleged that they were false, and that appellant's interest in the estate was not being protected, as the attorney was not in fact acting for her and protecting her interest, but was acting for the executor. Further allegations appear that the appellee, as executor, negligently diminished the estate by reason of delay in not closing it, and thereby caused unnecessary expenses, charges, and taxes to be paid, and that appellee did not properly report to the court certain shares of stock of Westwood Manor, Inc., owned by the estate, sold by it, nor receive permission of the court to sell the same, and by reason of the sale appellee received in cash the sum of $46,950 and the further sum in excess of $17,000 from balances and collections of life insurance which were payable to the estate. It is further alleged that the Citizens' National Trust & Savings Bank of Los Angeles, which was then known as Citizens' Trust & Savings Bank, did embezzle trust funds of the estate in the sum of $35,174.50, and that the bank as the Citizens' Trust & Savings Bank did further embezzle funds of the estate in like manner by payment to itself the sum of $5,040.83, and further sums without reporting to or securing permission from the court, except only to the extent that the same was set forth in the first account current. Statement is further made in the bill that appellee, as executor, canceled a note of $1,750 given to decedent as the purchase price of an automobile, executed by R. P. Handley, and made no effort to collect the same; that without knowledge and consent of the probate court and the heirs and devisees, and by reason of the intermingling of appellant's mother's separate estate and the estate of the decedent, appellee paid out from the estate large sums of money in the upkeep and maintenance of the appellant's mother's separate property, and in the payment of taxes, encumbrances, and other charges, and in so doing depleted the treasury of decedent's estate; that the first account shows that appellee did pay to the widow of the decedent, widow's allowance, the sum of $15,500, which it is alleged was unlawful to the extent of the payments beyond one-year period for the total of $6,000. Complaint is made as to the amount

paid to the appraisers of the estate and that appellee bought mortgages from itself with money received from life insurance, bank balances, and the sale of stock and collections of a note which is not shown in its first account; that the first account of appellee was by an order of the superior court, on December 22, 1930, approved and settled, no objection was made thereto or appeal taken from the order of the court because, it is alleged, of the ignorance of the appellant and the other heirs, and because she believed the account to be correct; that appellee negligently failed to pay a mortgage of $27,000 on certain real property, although it had ample funds, but made a pretended assignment of the note secured by the mortgage to its dummy, Dorothy Wilkerson, and thereafter instituted foreclosure proceedings against itself, and theretofore claim had been allowed by it therefor against the estate and that appellee allowed default to be entered and by reason thereof the note in both law and fact had been paid, and that the statute of limitations had not, prior to the filing of the second account, run against the note which is not shown in the second account; that appellee seeks to continue its purported encumbrance against the property of the estate; that appellee failed to file the annual account required by law after the fourth year of its administration and filed no further account until after the close of the fifth year; that the second account filed at the end of 1932 shows that appellee had sold none of three encumbered pieces of real property, but has continued to operate them at inadequate rentals and at high expenses; that the second account shows that appellee has paid said widow for further allowance during the fourth and fifth years the sum of $7,000; that the inheritance taxes over and above the payment of $5,000 is $10,299.44, which has not been paid; that the second account takes as a basis figures settled erroneously in the settlement of the first account. Then appears the allegation as to how appellant learned of her rights and what her attorney did in ascertaining the facts, and the course he pursued, and certain conferences he had at appellee's offices, and when she was first advised by an attorney of her rights; that the second account was in December, 1932, filed in the superior court to which appellant and other heirs filed their objections and therewith stated certain objections to the first account. The conclusion is then stated that, if she had not been deceived, she would have contested the first account.

Numerous conclusions of law, most of which are erroneous, are stated in the bill and we must look to those allegations of fact in determining the principal question as to whether appellee was guilty of extrinsic fraud which would warrant a court of equity in reopening the first account in spite of the final order of the superior court in settling the same. The controlling principle is that where the conduct of an executor or trustee in a probate proceeding is challenged in the absence of extrinsic fraud of a material character, the decree or order settling the account of an executor made by a probate court having jurisdiction constitutes an adjudication in rem and is binding upon the world. There is no suggestion in the bill that the state superior court did not have jurisdiction when in settling the first account and proceeding further with the administration of the estate. The bill avers that the first account current was settled by the state superior court, and that court, when in doing so, was entitled to jurisdiction for that purpose.

An analysis of the bill and reference to the prayer shows that the relief appellant is seeking relates to probate matters over which the state superior court has exclusive jurisdiction in the absence of extrinsic fraud. In the first account current which was settled by the court, and which appellant seeks to reopen, the transfer of the joint tenancy property to the estate and its acceptance thereof was reported to the court and included in the inventory of the estate which was filed in the superior court, and that inventory showed the estate to be of the appraised value of $419,369.85 and was the sum that appellee accounted for in its first account current. Large sums were paid out by appellee, as executor, from the estate for the care and maintenance of the separate properties; the superior court then had actual knowledge of the separate properties of appellant's mother and the sums paid out for taxes and its care, and therefore no fraud was perpetrated on the court or those interested in the estate. When these properties became a part of the assets of the estate, which the executor was authorized to accept, he was required to conserve them. Schade v. Stewart, 205 Cal. 658, 272 P. 567. The payment of taxes and care of the joint tenancy properties by the executor was approved by the superior court sitting in probate who had power to determine that when it approved it in its order settling the first account current. Estate of

Frued, 131 Cal. 667–673, 63 P. 1080, 82 Am. St. Rep. 407. Nothing appears that the joint tenancy properties have been lost or that the mother is making any claim thereto. The transaction was submitted to the court and approved by it and the alleged nonfeasance and misfeasance acts relate to matters of administration as the alleged acts of embezzlement consisting of the appellee's investment of the funds of the estate in mortgages owned by its commercial department appear to have been accounted for in the first account current of the executor which balanced. The amount which appellee charged itself on its first account current of $419,-369.85 agrees identically with the amount of the inventory and appraisement. The charges that the appellee delayed the period of administration and negligently diverted certain sums from "estate proper" to care for the joint tenancy properties, paid widow's allowance for an unreasonable length of time, paid excessive sums to appraisers, negligently paid executor's and attorney's fees, negligently failed to pay the debts of the .estate and inheritance taxes, and negligently permitted apartments to remain vacant and unlawfully invested the money of the estate, and the other allegations relating to the appellee's accounts are acts of administration which occurred before the settling of the first account current by the court and do not constitute extrinsic fraud.

Appellant was born on June 23, 1908, and attained the age of eighteen years on June 23, 1926, and under the laws of California, then existing, she became an adult. Civ. Code, § 25. The amendment of 1927 (St. 1927, p. 1119) raised the majority of females to twenty-one years, but did not change the status of appellant, who had already reached the age of majority under the former law, as there is no clearly expressed intention in the amendment that it should be retroactive. Kendall v. Kendall, 122 Cal. App. 397, 10 P. (2d) 131; Smith v. Smith, 104 Kan. 629, 180 P. 231. However, the court on November 8, 1927, appointed appellant's mother as her guardian.

■ The present action is not one separate and apart from probate administration of the estate or declaring a distributive share in the estate, but is one to determine whether the executor had properly managed the estate and properly paid out the funds in the administration thereof, and for the probate accounting of an account already settled by the superior court and not an accounting to determine the legatee's distributive share of the estate. The probating of the estate is still pending in the superior court, and the same has not been distributed, and the facts pleaded in the bill being insufficient to constitute extrinsic fraud, appellee, the executor, should not be restrained from proceeding further in the superior court, as that court has exclusive jurisdiction to determine whether it should continue as such executor and complete the probating of the estate. Waterman v. Canal-Louisiana Bank & Trust Co., executor, 215 U. S. 33, 30 S. Ct. 10, 54 L. Ed. 80; Carstensen v. United States Fidelity & Guaranty Co., 27 F.(2d) 11 (9 C. C. A.); Freeman et al. v. Hopkins et al., 32 F.(2d) 756 (9 C. C. A.).

Affirmed.