

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-3-2007

# Williams v. St Joan Arc Church

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4953

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Williams v. St Joan Arc Church" (2007). *2007 Decisions.* Paper 1367.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1367

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No.  05-4953
_____

MARILYN WILLIAMS,
Appellant

v.

ST. JOAN OF ARC CHURCH
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 04-cv-01033)
District Judge: Honorable William L. Standish
_____

Argued on November 28, 2006

Before:  RENDELL and AMBRO, <u>Circuit Judges,</u>
and PRATTER*, <u>District Judge</u>.

(Filed April 3, 2007)
_____

Colleen R. Johnston    **[ARGUED]**
Rothman Gordon
310 Grant Street, 3rd Floor
Pittsburgh, PA   15219
    *Counsel for Appellant*

_____

    *  Honorable Gene E.K. Pratter, Judge of the United States District Court for the
       Eastern District of Pennsylvania, sitting by designation.
Joni Mangino

Dara A. DeCourcy  **[ARGUED]**
Aaron R. Cramer
Zimmer Kunz
600 Grant Street
3300 USX Tower
Pittsburgh, PA   15219
  *Counsel for Appellee*


_____

OPINION OF THE COURT
_____

PRATTER, <u>District Judge</u>.

Marilyn Williams appeals from the entry of summary judgment in favor of her former employer, St. Joan of Arc Church ("Church"), in this case brought under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.* ("ADEA"). Because the District Court erroneously viewed the disputed facts in the light more favorable to the movant Church than to Ms. Williams, we will reverse.

Ms. Williams worked as the parish secretary from 1983 until May 2003, when her position was terminated. Ms. Williams was then 64 years old. While the parties agree that her position was eliminated, the parties dispute whether Ms. Williams was "terminated" or whether she "resigned." She asserts that she only left her employment after being told by the pastor, Father Pribonic, that her position would be eliminated as of the end of July 2003. According to Ms. Williams, during this interchange Father Pribonic made a specific reference to her age and planning for her retirement.

The Church disputes Ms. Williams's account of this meeting. During discovery,

2

Father Pribonic testified that the parish secretary position was eliminated for budgetary reasons to allow for the creation of a new position of parish office manager by combining the tasks previously performed by Ms. Williams with those of another employee, Mary Ann Heaps, whose part-time bookkeeper position was also being eliminated. Ms. Heaps, who was then 47 years old, ultimately was selected to be the parish office manager, at which point she assumed the duties previously performed by Ms. Williams.

The core of this case concerns the interplay of the evidentiary burdens borne by the parties with the appropriate summary judgment standards. While a jury may eventually agree with the District Court's anticipatory expressions of various practical realities and lack of discriminatory motives, we discern too many material factual disputes in the current record on the fundamental issues with too high a burden having been applied to Ms. Williams below to embrace the District Court's summary judgment conclusion.[1]

The District Court concluded first that Ms. Williams had not presented sufficient evidence that the Church was actually motivated by a discriminatory animus and that the reasons given by the Church for the termination of her position were merely pretextual. The District Court stated that "[b]ecause the Church is free to consolidated [sic] parish staff positions for reasons of economy and efficiency, to maintain a claim for wrongful discharge, Plaintiff must make a showing that Defendant's proffered legitimate business

---

[1] The District Court referred the case to a Magistrate Judge who prepared a Report and Recommendation urging summary judgment in favor of the Defendant Church. The Report and Recommendation was adopted by the District Court without modification.

reasons were merely pretextual." Report and Recommendation 8.

The District Court next concluded that because she presented no evidence supporting pretext, the only avenue by which Ms. Williams could avoid summary judgment depended on the Church's decision to place the younger Ms. Heaps[2] in the new position of office manager. Here, the District Court concluded that Ms. Williams's failure to apply for the new position defeats any such claim.[3] *Id.* at 10. The District Court considered that Ms. Williams "was expressly invited to apply for the position and declined to do so, electing instead to terminate her employment." *Id.* at 11. According to the District Court, because Ms. Williams did not apply for the new position, she could not maintain a claim that the Church chose someone younger instead of her. The District Court further concluded that for these same reasons, Ms. Williams could not make out a claim for constructive discharge. *Id.* at 12.

Finally, the District Court found that Ms. Williams failed to present sufficient evidence that she was subjected to an adverse employment action to permit her to proceed

---

[2] Although Ms. Heaps was 47 years old, and, therefore, also a protected employee under the ADEA, Ms. Williams may still bring a claim pursuant to the ADEA as long as the replacement employee was "substantially younger" than her. *See O'Connor v. Consol. Coin Caterers*, 517 U.S. 308, 313 (1996). In *Showalter v. University of Pittsburgh Medical Center*, 190 F.3d 231, 235-36 (3d Cir. 1999), this Court relied upon *O'Connor* to hold that the "sufficiently younger" category option applies to "reduction-in-force" cases under the ADEA as well as to non-reduction-in-force cases.

[3] The Magistrate characterized this as a "failure to retain" case, Report and Recommendation 1, and seemed to consider Ms. Williams's failure to apply for the newly created position fatal to her claim. *Id.* at 2, 10-14.

4

on her age discrimination claims. *Id.* at 14.

We find that the District Court erred in concluding that Ms. Williams did not establish her *prima facie* claim as a matter of law and also by substituting its own judgment for that of a jury's on the issue of whether - - and, if so, when and to what degree of significance - - an offer was extended to Ms. Williams to apply for the newly created office manager job.

We exercise plenary review over an order granting summary judgment, and apply the same standard the lower court should have applied. *Showalter,* 190 F.3d at 234. A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In making this determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Showalter*, 190 F.3d at 234 (*quoting Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

In ADEA cases, the court applies a "slightly modified version" of the evidentiary framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Showalter*, 190 F.3d at 234 (*citing Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc). *Cf. O'Connor v. Consol. Coin Caterers*, 517 U.S. 308, 311 (1996) (assuming, without deciding, that the *McDonnell Douglas* framework applies

5

to ADEA cases).  Thus, a plaintiff bears the burden of proving, by a preponderance of the evidence, a *prima facie* case of discrimination.  *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 341 (3d Cir. 1990); *Showalter*, 190 F.3d at 234.  To establish a *prima facie* case of discrimination under the ADEA - - a task not intended to be onerous, *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995) - - a plaintiff must demonstrate that (1) she was 40 years of age or older at the time the action occurred; (2) she suffered an adverse employment action; (3) she was qualified for the job from which she was terminated; and (4) she was replaced by a sufficiently younger person, creating an inference of discrimination.  *Showalter*, 190 F.3d at 234.

If a plaintiff succeeds in establishing a *prima facie* case, the burden of production (but not of persuasion) shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employee's rejection.  *Turner*, 901 F.2d at 341; *Showalter*, 190 F.3d at 235.  Should the defendant fail, judgment should be entered for the plaintiff. *Showalter*, 190 F.3d at 235.  If the defendant does carry this burden, however, the burden of production shifts back to the plaintiff to summon evidence "from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  *Id.* (citations omitted).  Opposing a motion for summary judgment, a plaintiff need not present evidence that the employer's proffered reason was false *and* that discrimination was the real reason, but may prevail by

6

*either* discrediting the employer's proffered reasons, either circumstantially or directly, *or* by providing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. *Id.* at 234 (citations omitted); *see also Torre v. Casio, Inc.*, 42 F.3d 825, 830 (3d. Cir. 1994) (affirming this standard at the summary judgment phase) (*citing Fuentes v. Perskie*, 32 F.2d 759, 764 (3d Cir. 1994)).

Here, the District Court's analysis with respect to whether Ms. Williams presented a *prima facie* case was in error. While the analysis initially focused on Ms. Williams's burden of producing evidence of pretextual motive, the District Court ultimately concluded that Ms. Williams did not produce sufficient evidence of an adverse employment action, which is the second element required to establish a *prima facie* case. In essence, the District Court adopted the Church's argument that Ms. Williams "voluntarily resigned" from her position, despite the clear assertion in Ms. Williams's motion papers that she was "fired." R. at 40, 44. Then, later in its analysis of the fourth prong, the District Court essentially re-addressed the adverse action issue by reasoning that Ms. Williams could not have been "replaced" by a substantially younger person because her position was eliminated (i.e., there was no "replacement" because there was no empty position to fill). To justify this reasoning, the District Court noted that Father Pribonic, in the same letter in which he confirmed to Ms. Williams that her position was being eliminated, invited her to apply for the new office manager position, which she did

7

not do. R. at 27. The District Court then pursued two avenues that we believe have no determinative roles in the analysis at this point, namely, whether Ms. Williams was terminated or voluntarily resigned (given that she ostensibly was invited to apply for the new job) and whether it would have been futile for her to apply for the new job.

We see the issue of "adverse employment action" much more simply. Ms. Williams's ADEA claim rests upon her termination, and the elimination of her job, which was accomplished in her first encounter with Father Pribonic. Whether a jury may consider probative of some issue, one way or the other, the parties' disagreement with respect to the significance of the subsequent invitation that Ms. Williams apply for the new position (and her failure to do so) does not alter the fact that she was terminated from her job.

Ms. Williams asserts that when Father Pribonic initially approached her about the elimination of the parish secretary position, he raised for discussion or consideration her age and potential retirement. R. at 88, 108. She claims that at that first meeting, although Father Pribonic mentioned the new position, he did not extend an invitation to her to apply for the position. R. at 83. According to Ms. Williams, there was no discussion at that time about the Church's need to economize or reduce personnel for any similar reason. Indeed, she testified that she asked Father Pribonic whether he was trying to get rid of her, R. at 88, while Father Pribonic denies being asked that question. R. at 101. He asserts that by the time he met with Ms. Williams he had already decided to eliminate her

8

job. R. at 100. The parties' differing accounts of this aspect of their meeting does not undermine our conclusion that if the District Court had considered this evidence in the light more favorable to Ms. Williams rather than the interpretation more favorable to the Church, Ms. Williams' satisfaction of her burden to present a *prima facie* case would have been clear. Ms. Williams presented evidence that (1) at age 64, she was a member of the protected class, (2) she was terminated from her position as office secretary and for that reason suffered an adverse action, (3) she was qualified for the job of office secretary, and (4) she was replaced in the performance of her previous duties by Ms. Heaps, who is significantly younger than Ms. Williams. Thus, the District Court's granting of the Church's motion for summary judgment on this point was in error.

Because we conclude that Ms. Williams presented sufficient evidence to establish a *prima facie* case, we must next consider whether the District Court also erred in concluding that there was no evidence on the record that would support a reasonable jury finding pretext. The Church argues that its decision to consolidate the two positions was motivated by considerations of economics and efficiency, considerations which may prove to be legitimate in the final analysis, but which are at this point open to reasonable dispute. Ms. Williams suggests that Father Pribonic's statements during their first meeting about her age and his raising the possibility that she might retire provide sufficient evidence of discriminatory animus to undermine the legitimacy of the after-the-fact stated reasons for the job elimination. Indeed, a jury may conclude that these reasons

9

may well only have suggested themselves once Ms. Williams's "retirement" appeared to Father Pribonic to be imminent. Ms. Williams further argues that by improperly discounting such statements by her superior, which are part of the record, the District Court improperly substituted its own judgment for that of the jury.

The District Court did not address at all the alleged statements made by Father Pribonic about Ms. Williams's age and the possibility that she might retire (nor, for that matter, did the District Court acknowledge the parties' dispute over whether Father Pribonic or Ms. Williams first raised the topics of age and retirement). Rather, the District Court assumed the reasonableness of the Church's purported reasons of efficiency and economics for consolidating the two positions without a single citation to the record.

Given the burden shifting analysis discussed above, and recognizing that Ms. Williams must only *either* discredit the Church's proffered reasons *or* adduce evidence that discrimination was more likely than not a motivating or determinative cause of the adverse employment action, we conclude that there are disputes of fact which should be addressed by a fact-finder because there is sufficient record evidence from which that fact-finder reasonably could conclude that the Church's efficiency/economics argument is, in fact, pretextual.[4]

---

[4]Father Pribonic testified that the Church was experiencing financial problems in May 2003, specifically with respect to "increasing overhead." R. at 109. However, he testified that there was no financial emergency, and the parish's financial situation was no worse than at any other time. *Id.* He also testified that "given the small space of the area

Therefore, even though in the final analysis and after observing the key parties

where the offices are located, it would be more efficient to have one person handle all parts of the operation in the office." R. at 100. As to the hiring of Ms. Heaps as office manager, Ms. Heaps testified that she had "a couple informal conversations" with Father Pribonic about the position, which she would consider an "interview," but that she did not complete an application or submit any documents to be considered for the position. R. at 30.

Ms. Williams also submitted evidence that, despite Father Pribonic's intent to have only one person fill a consolidated position of office manager, for the sake of efficiency, Mary Tracey, another employee of the Church, worked in the rectory from around September 2003 through approximately October or November 2003. R. At 223. Ms. Tracey fulfilled many of the office manager's responsibilities, such as answering phones, scheduling masses and "just anything that anybody else would have done when they were there." R. at 188. Thus, although the Church intended to consolidate two positions into one, Ms. Williams offered some evidence that suggests that the consolidated position still required two people to perform all of the required tasks. Moreover, the evidence is such that a jury could conclude that whatever need for efficiency there may have been, it had certainly existed for quite some time and may only have come to the fore when Ms. Williams's "retirement" did not proceed according to plan. This Court offers no comment upon these competing accounts, other than to conclude that it was - - and is - - up to the jury to judge the efficacy of Father Pribonic's stated reasons for terminating Ms. Williams and whether the termination constituted age discrimination.

11

testify, the jury may find Ms. Williams's claim unpersuasive, at this juncture we see enough of a genuine dispute on sufficiently material facts to permit a jury to resolve this case, and we will reverse the entry of summary judgment for the employer.

---

AMBRO, *Circuit Judge*, dissenting in part

This case presents unfortunate circumstances in which a dedicated Church employee felt that she was unjustly let go because of her advancing age. However (and despite my belief that summary judgment is granted too often), I cannot agree with the majority that Ms. Williams has established the disputed issues of material fact necessary to defeat summary judgment and warrant a jury trial. I do agree with the majority that the District Court erred in its employment-discrimination analysis, but not because it stepped into the jury's collective shoes. In this context, I would affirm.

The principal problem is that the District Court collapsed the various stages of the *McDonnell Douglas* burden-shifting framework into a single tier. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Specifically, it intertwined the issue of Ms. Williams's failure to apply for the new position with the issue of her ability to show that the Church's proffered reasons for consolidating two jobs were pretextual. The Court

12

concluded that neither the elimination of Ms. Williams's position nor the failure to hire her for the new position was an adverse employment action because the Church's decision to consolidate, and thus eliminate Ms. Williams's position, was the result of legitimate business concerns. Essentially, the Court juxtaposed two separate analyses under the *McDonnell Douglas* framework: the *prima facie* stage, *see* Maj. Op. at \*6 (citing *Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 234 (3d Cir. 1999); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 341 (3d Cir. 1990)), and the pretext stage, *see* Maj. Op. at \*7 (same). On review, I consider each stage separately, as does the majority. But, unlike the majority, separating those two inquiries does not lead me to "discern too many"—or any—"material factual disputes," Maj. Op. at \*3, regarding either inquiry such that we must send this case back for a jury trial.

First, I "see the issue of 'adverse employment action'" even "more simply" than does the majority.[5] I emphasize the principle that, typically, discrimination claims are easily made out. *See, e.g.*, *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995) ("[T]he prima facie case under the *McDonnell Douglas–Burdine* pretext framework is not intended to be onerous.") (citations omitted); *Weldon v. Kraft*, 896 F.2d 793, 798 (3d Cir. 1990) ("The framework set forth in *McDonnell Douglas* . . . was never intended

---

[5] The majority views as relevant to the District Court's application of the summary judgment standard the dispute between Ms. Williams and Father Pribonic concerning what transpired at their first meeting. I disagree. In my view, Ms. Williams established her *prima facie* claim as a matter of law, and the facts surrounding the events leading up to the elimination of her position are irrelevant.

13

to be rigid, mechanized or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.") (internal citations omitted); *see also Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 204 (3d Cir. 1998) (noting that we must construe remedial statutes liberally). Therefore, in the face of doubt as to whether Ms. Williams meets the requirements for each prong, we would come down in her favor.

Here, there is no doubt. Only the second prong is at issue—whether Ms. Williams suffered an adverse employment decision. As the majority notes, Maj. Op. at *4 n.2, we have held that reduction-in-force actions suffice to meet the requirements of the adverse employment decision prong when, as here, the employer has retained a similarly situated employee who was sufficiently younger to create an inference of age discrimination. *See Anderson v. Consolidated R.R. Corp.*, 297 F.3d 242, 250 (3d Cir. 2002); *Showalter*, 190 F.3d at 234–35. Because Ms. Williams's position was eliminated through a reduction-in-force decision, I conclude along with the majority—though as a matter of law, for which issues of disputed fact as to the reasons for that elimination are irrelevant—that the District Court's grant of summary judgment on this point was incorrect.[6]

---

[6] On this issue, I disagree with the majority that "whether Ms. Williams was terminated or voluntarily resigned" has "no determinative role[] in the analysis" at the *prima facie* stage. The involuntary termination constituted prong two of the *prima facie* case. This is consistent with Ms. William's claims. *See* Appellant's Br. at 20 (noting that her claim is not one of constructive discharge, but that the elimination of her job was a discharge that constituted an adverse employment action).

14

Second, I disagree that material issues of disputed fact persist to defeat summary judgment at the pretext stage. *See* Maj. Op. at *3, 5. The majority bases its opinion on a single issue: "whether—and, if so, when and to what degree of significance—an offer was extended to Ms. Williams to apply for the newly created office manager job." Maj. Op. at *5. There is no dispute that Father Pribonic invited Ms. Williams to apply for the new position; the record clearly shows that he did. *See* App. at 27 (letter stating that "[a] new position of Parish Office Manager is being created and you are invited to apply for the same"). Thus, the majority cannot base its conclusion on the notion that there was a question as to *whether* Ms. Williams received an offer to apply.

The only dispute on this point is *when* Father Pribonic first made this invitation—at their first meeting, *see id.* at 86, 100–01, or by letter, *id.* at 27. But the timing does not determine the outcome because it is not a *material* issue to the claim. Neither does whether she took the invitation to heart. That is, if, by asking "to what degree of significance" she received the invitation to apply, the majority means to suggest that Ms. Williams's failure to apply may support her discrimination claim, this suggestion seems unfounded. As the District Court noted, the failure to hire Ms. Williams for the new position was not an adverse employment action because, once she was no longer employed by the Church, its failure to hire her—especially when she did not apply for the position—did not affect her employment situation. *See Becker v. Mack Trucks, Inc.*, 281 F.3d 372, 382 (3d Cir. 2002) ("[A] failure to hire does not amount to a circumvention of

15

promised benefits because job applicants who have yet to be hired have not been promised any benefits.  In fact, we have held that [the term] discriminate . . . is limited to actions affecting the employer-employee relationship.") (internal citations and quotation marks omitted).  In sum, regardless of the reasons in this record for Ms. Williams's reluctance to apply for the new position after affirmatively being invited to do so, it is undisputed that she did not apply.  By analogy to *Becker*, 281 F.3d at 382, the failure to apply bars her from being able to make out an employment discrimination claim on that basis.

The only material fact that I might consider possibly to be in dispute is whether the Church presented sufficient evidence to support a legitimate, nondiscriminatory reason that it consolidated positions out of economic and efficiency concerns.  The majority suggests that it did not.  Maj. Op. at *10 ("[T]he District Court assumed the reasonableness of the Church's purported reasons of efficiency and economics for consolidating the two positions without a single citation to the record.").  But here too, I think the Church met its burden as a matter of law, as Ms. Williams provided no evidence to suggest that the proffered reason was pretextual.

Under *McDonnell Douglas*, once Ms. Williams has established a *prima facie* case, as we agree that she has, "the burden of production (but not the burden of persuasion) shifts to the [employer], who must then offer evidence that is sufficient, if believed, to

16

support a finding that the defendant had a legitimate, nondiscriminatory reason for the adverse employment decision." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 465 (3d Cir. 2005) (internal citations, brackets, and quotation marks omitted); *Showalter*, 190 F.3d at 235; *Turner*, 901 F.2d at 341. We may consider Father Pribonic to be a representative of the Church who is knowledgeable about its financial situation. Accordingly, his testimony that there was increasing overhead (though admittedly, no financial emergency), App. at 100, 109, may be taken to satisfy the Church's burden of production.

His testimony would of course be subject to doubt upon Ms. Williams's ability to point to "some evidence, direct or circumstantial," that could cause a reasonable factfinder to disbelieve the proffered reason or give rise to an inference that the reason is more likely pretextual for actual discriminatory motives. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).[7] The essential element at this stage is the requirement to produce "some evidence" for the inference. But Ms. Williams produced no evidence to satisfy her burden. For example, she made no request to review the Church's financial records.

---

[7] *Fuentes*, the case setting out the standard in our Circuit, provides that to prevail at the pretext stage an employee must be able to point

> to some evidence, direct or circumstantial, from which a factfinder would reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

32 F.3d at 764; *see also Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1067 (3d Cir. 1996) (*en banc*).

17

Absent the production of evidence, we cannot conclude that Ms. Williams has satisfied her burden to prevail on the pretext stage.

The majority suggests that evidence exists in the record to make the requisite demonstration of discriminatory animus. For example, it notes that Ms. Williams may have demonstrated pretext by showing that a third employee, Mary Tracey, continued to work at the Church for some months after the position-consolidation. Maj. Op. at *11 n.4. The suggestion is that this fact may give rise to an inference that Father Pribonic may not have been truthful in his assertions that economic and efficiency concerns drove his decision to eliminate Ms. Williams's position. But the majority does not mention that Ms. Tracey previously worked at the Church on Fridays when Ms. Mary Ann Heaps (who filled the new position) could not. (Ms. Heaps worked four days per week and Ms. Tracey worked the fifth day. App. at 187–88.) She continued to work in that capacity and as a cleaner for approximately one year after Ms. Heaps was hired. App. at 223. Alone, that information would scarcely lead a reasonable factfinder to conclude that the Church's efficiency reason was pretextual because there is no doubt that the Church did reduce two separate full-time office positions to a single full-time position plus a possible additional one-day-per-week employee.

If "[t]he core of this case concerns the interplay of the evidentiary burdens borne by the parties with the summary judgment standards," Maj. Op. at *3, I believe that Ms.

18

Williams has not fulfilled her evidentiary burden at the pretext stage.  If this is true, it would be an understatement to say that "a jury may eventually agree with the District Court[] . . . ."  Maj. Op. at *3.  More pointedly, without the existence of disputed material facts, I believe that summary judgment in favor of the Church was indeed appropriate.  Accordingly, though I do not agree with all its reasoning, I would affirm the District Court's judgment, and thus respectfully dissent.