# BENEDICT *v.* CITY OF NEW YORK

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 315.    Argued April 22, 1919.—Decided June 2, 1919.

A suit against a city to enforce, as upon an express trust, an accounting of an improvement fund and liability for alleged breaches of trust in failing properly to conduct the sales of lands assessed for benefits and properly to apply the proceeds of such sales to the satisfaction of public improvement certificates, said suit not having been instituted until more than 17 years after definite repudiation of the alleged trust duties, and the efforts on behalf of the plaintiff having been meanwhile confined to the obtaining of a restraining order, which was never observed, and to the presentation of divers

memorials and offers of compromise to the city authorities, *held* barred by laches, such a cause of action, in New York, being subject, if not to the six-year statute of limitations (Code Civ. Pro., § 382), then to the ten-year statute (*id.*, § 388) governing bills for relief in cases of trust not cognizable by courts of common law. Pp. 325–327.

In case of an express trust, the statute begins to run when the trust is repudiated. *Id.*

Federal courts, in equity, are not bound by state statutes of limitations, but are ordinarily guided by them in determining their action on stale claims. *Id.*

247 Fed. Rep. 758, affirmed.

THE case is stated in the opinion.

*Mr. Leon Abbett,* with whom *Mr. Charles K. Allen* was on the brief, for appellant.

*Mr. Terence Farley,* with whom *Mr. William P. Burr* and *Mr. George P. Nicholson* were on the brief, for appellee.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

In 1874 commissioners theretofore appointed by special act (Laws N. Y. 1871, c. 765) to improve the streets of Long Island City were directed to improve a particular district. Laws N. Y. 1874, c. 326. The act provided that the cost of the improvement should be assessed upon the land benefited and created a lien upon the land for the assessment and interest; but it declared that no sale for failure to pay the assessment could be made before the expiration of ten years after filing of the assessment roll. The improvement was to be paid for by delivering to the contractors interest-bearing certificates of indebtedness equal, at par, to the expense of the work and materials furnished. These certificates did not provide

for a personal obligation on the part of the city or the district. They were receivable in payment of assessments at par and interest and were payable in cash only out of moneys to be derived from the assessments, which the city treasurer was directed to keep as an Improvement Fund separate from all other funds. The statute further provided that upon the completion of the sales for non-payment of assessments "all the certificates issued by the said commissioners shall be paid off, and if there be any excess to the credit of said improvement fund . . . it shall be paid into the city treasury." By an amendment passed June 11, 1879 (Laws N. Y. 1879, c. 501), it was provided that, under certain circumstances, it was the duty of the officer making sale of land for non-payment of assessment to receive, in payment of the purchase price, certificates at par and interest.

Certificates were issued to the amount of $1,847,500. A large portion of the assessments levied were left unpaid by the land owners; and it became necessary to sell the properties. Sales for non-payment of assessments were made in 1888. The purchase price was paid in certificates at par and interest up to the amount of the assessments, the interest and the excess, if any, being paid in cash. In 1892 and 1893 sales of land were made at much less than the amounts of the assessment. Here also bidders were permitted to pay the purchase price in certificates at par and interest. Likewise the owners of lots sold were permitted to redeem lots upon paying the amount of the bid and accrued charges by certificates at par and interest. After all the land had been disposed of and the Improvement Fund exhausted there remained and are now outstanding unpaid certificates aggregating about $300,000.

Prior to June 11, 1879, Benedict acquired certificates to the amount of $8000 which he has held ever since, and on which the principal and interest are unpaid. In July,

1910, suing on behalf of himself and others similarly situated, he brought this suit in the Circuit (now District) Court of the United States for the Southern District of New York to enforce, as upon an express trust, an accounting of the Improvement Fund and liability for alleged breaches of trust. The contention is that Long Island City became trustee of the lien on the several lots for the benefit of the certificate holders; and the alleged breaches of trust relied upon are in substance that, through its treasurer and in spite of the protest, the city permitted and authorized sales of land for less than the assessment in violation of the Act of 1874; that instead of cancelling certificates received in payment of assessments and of the purchase price at sales, it reissued the same; and that even where sales had been made for less than the amount of the assessments it allowed redemption from sales in certificates at par and interest. The City of New York is made defendant on the ground that in 1898 Long Island City was merged into it by the Greater New York Act and that the consolidated corporation assumed the obligations and liabilities of the constituent municipalities. Laws N. Y. 1897, c. 378.

Protest was made by plaintiff at time of sales against the course pursued by the treasurer, but he justified the action complained of, relying upon the Act of 1874 and c. 501 of the Laws of 1879 and c. 656 of the Laws of 1886. Writs of mandamus had previously been issued compelling him to receive certificates at par and interest even in payment for the redemption of land sold for non-payment of assessments. *People ex rel. Ryan* v. *Bleckwenn* 8 N. Y. Supp. 638; *People ex rel. Oakley* v. *Bleckwenn*, 13 N. Y. Supp. 487; *People ex rel. Oakley* v. *Bleckwenn*, 126 N. Y. 310. But plaintiff contended that, in view of § 23 of Title VI of c. 461 of the Laws of 1871, if the Acts of 1879 and 1886 were construed as authorizing the action of which he complains, they impair, in violation of the

Federal Constitution, the obligation of contracts previously entered into with certificate holders. The case was fully heard in the District Court on evidence, and several distinct defenses were relied upon. The city insisted, among other things, that the statutory lien did not impose a statutory trust upon it; that the persons who acted were not its agents, but independent officers, agents of the State; that the specific provision of the statute relied upon by plaintiff did not constitute terms of the contract but related merely to the remedy; and that the later legislation introduced, at most, permissible changes of remedy. The court, without passing upon these questions, entered a decree dismissing the bill on the ground that the statute of limitations and laches constituted a complete defense. 235 Fed. Rep. 258. This decree was affirmed by the Circuit Court of Appeals on the same grounds. 247 Fed. Rep. 758. Benedict is a citizen of Connecticut; but as he invoked the jurisdiction of the Circuit Court not only on the ground of diversity of citizenship but also because of rights asserted under the Federal Constitution, his further appeal to this court was permissible. *Vicksburg* v. *Henson,* 231 U. S. 259, 267–268.

The whole case is here for review; but we find it unnecessary to decide most of the questions presented; because we are of opinion that the lower courts did not err in holding that the suit was barred by laches. None of the acts relied upon here as constituting breaches of trust occurred later than the years 1892 and 1893. Before the principal action complained of was taken, the city treasurer publicly announced his purpose to pursue the course complained of, which he asserted was in accordance with law. Plaintiff was represented at the sales by an agent who protested there orally and elsewhere in writing against the treasurer's declared purpose and against specific acts now complained of, asserting then

as now that the course pursued was illegal. We have here a definite repudiation of the alleged trust duties more than 17 years before the institution of this suit. And there are no circumstances which excuse the delay. What occurred in the interval, so far as appears, was this:

(a) In June, 1893, Benedict commenced in the Circuit Court of the United States for the Eastern District of New York a suit in equity to restrain the treasurer from receiving certificates from property owners when redeeming their properties from assessment sales, made to the complainant, and from marking upon the books as paid any assessment upon such property when it was sold for less than the amount of the assessment. It seems that hearing on the motion was adjourned to a later date, and that a restraining order issued which the plaintiff alleges was never observed. It is not shown that any other proceeding was ever taken in the suit.

(b) On May 9, 1904 (at whose instance does not clearly appear), the legislature enacted a statute (Laws N. Y. 1904, c. 686) entitled "an Act to authorize the comptroller and corporation counsel of the city of New York on behalf of said city to compromise and settle with property owners interested, certain claims for taxes, assessments and sales for the same, and for or on account of evidences of indebtedness issued on account of local improvements in the territory formerly included within the boundaries of Long Island City."

(c) On February 21, 1905, plaintiff filed with the comptroller of the City of New York an offer to sell to the city by way of compromise certificates held.

(d) On May 26, 1909, plaintiff's present counsel, acting on behalf of the holders of two hundred and eighty-three certificates, presented to the comptroller a memorial and statement of facts, in which he requested "that provision should be made in some way for the payment of the amount due" on the certificates.

(e) Under date of March 19, 1910, plaintiff presented to the comptroller a similar memorial which he requested should be submitted for determination to the board of estimate and apportionment, in view of the fact that chapter 601 of the Laws of New York of 1907 provided that the comptroller may do so where he believes that, for any reason, a claim against the city is not valid legally, but in equity, justice, and fairness the same should be paid, the city having been benefited by the acts performed and the claim not being barred by the statute of limitations.

(f) On April 26, 1910, a formal request was made upon the deputy comptroller.

Under the law of New York the alleged cause of action would have been subject, if not to the six year statute of limitations, (New York Code of Civil Procedure, § 382), then to the ten year statute of limitations, (New York Code of Civil Procedure, § 388), governing bills for relief in case of the existence of a trust not cognizable by the courts of common law. *Clarke* v. *Boorman's Executors,* 18 Wall. 493. If the Act of 1874 created an express trust, the statute of limitations would not begin to run until there had been a repudiation of the trust. *New Orleans* v. *Warner,* 175 U. S. 120, 130. Here there was an open repudiation of the trust duties which the plaintiff now seeks to enforce. And 17 years were allowed to elapse after that repudiation before this suit was begun and more than ten years before any attempt was made to secure some settlement by negotiation; and there clearly was no waiver of the statute. While it is true that federal courts sitting in equity are not bound by state statutes of limitations (*Kirby* v. *Lake Shore & Michigan Southern Railroad,* 120 U. S. 130), they are, under ordinary circumstances, guided by them in determining their action on stale claims. *Godden* v. *Kimmell,* 99 U. S. 201, 210; *Philippi* v. *Philippe,* 115 U. S. 151; *Pearsall* v. *Smith,* 149

U. S. 231; *Alsop* v. *Riker*, 155 U. S. 448.   Compare *Sullivan* v. *Portland & Kennebec R. R. Co.*, 94 U. S. 806, 811.   Between 1892 and 1905 plaintiff did nothing to enforce his alleged rights except to commence in 1893 a suit which he did not prosecute.   His lack of diligence is wholly unexcused; and both the nature of the claim and the situation of the parties was such as to call for diligence. The lower courts did not err in sustaining the defense of laches.

*Decree affirmed.*