### REED v. FAIRMONT CREAMERY CO.

Circuit Court of Appeals, Eighth Circuit.
December 31, 1929.

No. 8591.

W. C. Fraser, of Minneapolis, Minn. (Albert G. Craig, of Denver, Colo., and George L. Schein, of Chicago, Ill., on the brief), for appellant.

Leonard A. Flansburg, of Lincoln, Neb. (George A. Lee, of Lincoln, Neb., M. S. Hartman, of Omaha, Neb., and John O. Sheldahl, of Lincoln, Neb., on the brief), for appellee.

Before VAN VALKENBURGH and GARDNER, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. This appeal seeks to reverse a decree sustaining the appellee's motion to dismiss the appellant's bill of complaint. The motion alleged that no cause of action was stated in the bill, and that the bill showed plaintiff's claim to be barred by the statute of limitations and by the plaintiff's laches.

In substance, the bill alleged that the defendant was a corporation organized in 1884 under the laws of Nebraska, with an originally authorized capital stock of $5,000, but having an authorized capital stock of $10,000,-

000, when the bill was filed, and operating large creameries with branches in many cities of the United States.

The plaintiff alleges that he entered the employment of the defendant in 1888. From 1890 until 1896 he was employed as "territory man soliciting business," that he remained in the employment of the defendant until 1901, and that in 1893 the defendant had other employees, named C. C. Dempsey, Thomas Green, Verge Stuart, and ———— Hapgood.

It is alleged that the plaintiff and each of these employees were receiving salaries of about $75 per month, and had asked for an increase of salary; that E. F. Howe was a member of the defendant's board of directors, the superintendent of its plant, and in charge of the employment of, and of the making of contracts for, the services of all its employees; and that an oral agreement was made by the plaintiff and the other employees named above with the defendant, through its superintendent Howe, to the effect that if these employees should remain in the defendant's employment for 5 years, they would be entitled to have delivered to each of them $1,000 of the capital stock of the defendant; that defendant agreed to issue $1,000 of the capital stock to each, to retain it in the defendant's safe, and to deliver a certificate to each, representing $1,000 of the stock at the end of the 5-year period.

It is further alleged that the defendant, through its superintendent, delivered to C. C. Dempsey a written memorandum as evidence of the oral agreement. The memorandum, as pleaded, begins with the name of Wallace Wheeler, president, H. J. Rushton, secretary and treasurer, and E. F. Howe, superintendent, and continues as follows:

"Office of the Fairmont Creamery.
"Incorporated June 14, 1887.
"Capital and Surplus Jan. 1, 1982,
$38,446.89.
"Seven Creameries:
"Capacity, 3,000,000 lbs. annually.

"Fairmont, Neb., Feby. 4, 1893.

"C. C. Dempsey, Esqr., Crete, Neb.—Dear Sir: Your oil test last time was 4.08 Butter (yeald) all right. Make some butter here today to send to Dubuque. Made some at Fairmont the first. Terrible cold weather to make fancy butter. Burt will (fo) to Millford and not come to Crete.

"The Stock proposition is that we put $5000.00 of the Capital Stock which is $100,-000.00 in the safe at the office. $1000.00 each for You, Reed, Green, Stuart and Hapgood, and as soon as it earns dividends and pays

for itself it is turned over to you the earnings ought to be $20000 a year at which rate the stock would pay for itself in 5 years, or in other words it is $200.00 a year of an Increase in your Salary in the shape of stock that in all (probibility) will earn that much more thereafter, and will be worth, more than $1000.00 to sell at the end of the five years, while we get the energy and care you each can add to the business, and the surety that you will stay with us.

"I can explain more fully when I see you. Read this and then destroy it as we do not want outsiders to know such things.

"Yours truly,        E. F. Howe.

"I go east on the flyer Monday noon."

The bill alleges that the plaintiff accepted the terms set forth in the memorandum and remained in the defendant's employment for more than 5 years thereafter, and that the $1,000 of capital stock earned dividends in excess of an amount sufficient to pay its par value, but that the defendant failed and refused to deliver the stock to him.

The bill avers that C. C. Dempsey remained in the defendant's employment until 1911, and that at the end of the 5-year period, on behalf of the plaintiff and the other employees named, he requested the defendant, through its superintendent, Howe, to deliver the stock to the plaintiff and to the other employees, but that Howe asserted that the stock had not earned enough at that time to pay for itself, but when it did, the stock would be issued; and that Dempsey, in 1911, on behalf of the plaintiff and for himself and for the other employees named, demanded of the defendant the issuance of the capital stock and its accumulations to the plaintiff and the other employees, but was informed by the defendant, through its officers, that such an agreement could not be enforced as they had no written evidence of it.

It is further alleged that C. C. Dempsey died June 19, 1923, and in his effects the above written memorandum was found in 1926; that since that time, the plaintiff demanded of the defendant the issuance of the $1,000 of stock as provided in the memorandum, and its accumulated cash earnings and any stock dividends it had earned; and that the defendant has been very prosperous and has declared many cash and stock dividends. The prayer of the bill asks that the defendant be held to have been a trustee for the plaintiff since February 4, 1898, of $1,000 of the par value of the capital stock of the defendant, for an accounting of all cash or stock dividends earned on the stock since that time,

that the defendant should be required to issue to the plaintiff such stock as may be found due, and for judgment for the accumulated cash earnings on the stock.

Assuming the most favorable aspect of the bill claimed by appellant, that it alleges the existence of an express trust, because of the appellee's declaration that it would hold $5,000 of the capital stock for appellant and others, to be delivered when the dividends earned upon it equalled its par value, and the allegations of the earnings made by the stock, the question is presented of appellant's right to the relief demanded, in view of the delay in bringing his suit, under the circumstances shown in his bill of complaint.

The suit was begun in September, 1928. The appellant alleges that he performed his part of the oral agreement made by himself with the defendant in 1893 for the delivery to him in 1898 of the amount of capital stock claimed. Appellant does not allege any request made by himself for the stock, nor other action by himself seeking its delivery, until 1926, a period of 28 years after he was entitled to the shares, upon the theory of his bill of complaint.

The written memorandum differs in some important details from the oral contract pleaded. The plaintiff alleges that he accepted the terms of this memorandum, that the stock earned more than enough dividends to equal its par value, and that the appellee has held this stock as trustee for him since February 4, 1893. He alleges a request to the appellee made on appellant's behalf by C. C. Dempsey in 1898 for the delivery of the stock, and a refusal of the request based on a claim that the stock had not earned, at that time, enough to pay for itself. A second demand is alleged to have been made for delivery of the stock in 1911. This demand is also alleged to have been made on behalf of the appellant by C. C. Dempsey, and it is alleged that the appellee's officers refused the demand, stating that the agreement could not be enforced, as they had no written evidence of the alleged agreement. A period of about 15 years elapsed after this demand, before the date of appellant's next demand, and of about 17 years before bringing this suit.

The appellant alleges the discovery in 1926 of the memorandum among the papers which had belonged to C. C. Dempsey, but it appears that appellant himself had made the oral contract upon which he relies, and he does not aver any disability, nor even forgetfulness, preventing his assertion of that alleged contract. "When the bill shows upon

its face that the plaintiff, by reason of lapse of time and of his own laches, is not entitled to relief, the objection may be taken by demurrer. Maxwell v. Kennedy, 8 How. 210 [12 L. Ed. 1051]; National Bank v. Carpenter, 101 U. S. 567 [25 L. Ed. 815]; Lansdale v. Smith, 106 U. S. 391, 1 S. Ct. 350 [27 L. Ed. 219]." Speidel v. Henrici, 120 U. S. 377, 387, 7 S. Ct. 610, 612, 30 L. Ed. 718; 2 Perry on Trusts (7th Ed.) § 862.

Ordinarily, the lapse of time does not bar an action to enforce an express trust, but if the trust is clearly repudiated by the trustee, insisting on an adverse right and interest, and that repudiation and claim are brought to the notice of the beneficiary in such a manner that he is called upon to assert his equitable rights, the time within which he may assert the trust begins to run against the beneficiary. Philippi v. Philippe, 115 U. S. 151, 157, 5 S. Ct. 1181, 29 L. Ed. 336; Speidel v. Henrici, 120 U. S. 377, 386, 7 S. Ct. 610, 30 L. Ed. 718; Patterson v. Hewitt, 195 U. S. 309, 321, 25 S. Ct. 35, 49 L. Ed. 214; Benedict v. New York, 250 U. S. 321, 326, 39 S. Ct. 476, 63 L. Ed. 1005; Swift v. Smith (C. C. A.) 79 F. 709, 714; Mason v. MacFadden (C. C. A.) 298 F. 384, 389. 2 Perry on Trusts (7th Ed.) § 864.

In response to the demand made in 1911, appellee's officers stated that the agreement could not be enforced, as the appellee had no written evidence. This was a refusal to acknowledge the claims, and a challenge of their validity. The appellant did nothing further.

Although the appellant had been an employee of appellee for the 14 years from 1888 until December 31, 1901, and claims that he had made a contract in 1893 with the company by which the company agreed to deliver to him $1,000 of the stock at the end of 5 years further employment, he allowed the appellee to retain this stock and the earnings for 13 years, from 1898 until 1911, without protest on his part, and after the demand made in 1911 for the stock, he allowed the company to continue to retain the stock and its earnings for 15 years more without further protest and until 1926, and did not bring suit until 1928, at which time he claims that the earnings and accumulations on the $1,000 stock exceeded the sum of $100,000. No ignorance during these years of the earnings of the appellee, and no concealment by the appellee, is claimed. The facts show a clear repudiation of the alleged trust, and notice to the appellant of the repudiation, not only by the refusal of the demand made in 1911, but also by the circumstances, and an acquiescence by appellant in that repudiation.

This lapse of time, the change in value of the property, the plaintiff's knowledge of the facts constituting his alleged cause of action, the failure to receive or demand any of the earnings upon the $1,000 of stock following the refusals of the appellee, the lack of any reasonable excuse for the delay in bringing suit, are facts that make it inequitable to allow this suit to be maintained after so many years of delay.

As this is a suit in equity, the statutes of the state, limiting the time in which such suit may be brought, do not necessarily control, but under ordinary circumstances, the courts are guided by them in considering stale claims. Benedict v. New York, 250 U. S. 321, 327, 39 S. Ct. 476, 63 L. Ed. 1005. The period prescribed by the statutes of Nebraska within which a suit of this nature may be brought is 4 years from the time the cause of action has accrued. Comp. St. Neb. 1922, §§ 8509, 8511, 8517. We think the appellant was guilty of such laches as prevents the maintenance of his bill of complaint.

Decree affirmed.