**AUSTRIAN et al. v. WILLIAMS et al.**

No. 237, Docket 22314.

United States Court of Appeals
Second Circuit.

Argued May 5, 1952.

Decided Aug. 15, 1952.

Clark, Circuit Judge, dissented.

---

Sullivan & Cromwell and Milton Pollack, New York City, for defendant-appellant, Harrison Williams, Milton Pollack, Arthur H. Dean, Henry N. Ess, III, New York City, of counsel.

Austrian & Lance, New York City, for plaintiffs as trustees, Carl J. Austrian, Saul J. Lance, George H. Schwartz, Isadore H. Cohen, New York City, of counsel.

Roger S. Foster, Gen. Counsel, Aaron Levy, Washington, D. C., Atty. for Securities and Exchange Commission, amicus curiae.

Before SWAN, Chief Judge, and CHASE and CLARK, Circuit Judges.

CHASE, Circuit Judge.

Central States Electric Corporation, organized under the laws of Virginia in 1912 and hereafter to be called Central, was in business as an investment company having its principal office at Richmond, Virginia until, on February 23, 1942, it filed a petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., in the District Court for the Eastern District of Virginia. The petition was approved on February 27, 1942 and the trustees who were first appointed investigated the affairs of the debtor pursuant to § 167 of the Bankruptcy Act, 11 U.S.C.A. § 567, and recommended to the court that no suits be brought against the officers, directors or the principal stockholder of the corporation to recover for possible breach of fiduciary duty. The recommendation was approved by order of the court but the Court of Appeals reversed and directed further

investigation by new trustees. Committee for Holders, etc. v. Kent, 4 Cir., 143 F.2d 684. Following this, new trustees were appointed who made a further investigation and recommended that this suit be brought. The reorganization court so ordered and the trustees sued the officers, directors and the principal stockholder of the debtor, Williams, and others in the District Court for the Southern District of New York. The complaint, filed on July 5, 1945, charged the officers, directors and Williams with breach of their fiduciary duty to Central in that they overreached Central in respect to thirteen transactions and charged the other defendants with conspiring with them so to do. After trial by court, the complaint, as to nine of these transactions, was dismissed on the merits as to all the defendants; it was also dismissed on the merits with respect to the remaining four transactions as to all the defendants except Williams and one Kilmarx, a director of Central during the period of the alleged overreaching. From a judgment entered against them on these four transactions, which the court below designated by the letters B, C, I and L, defendant Williams has appealed.

These transactions are described in detail in the opinion of the district court, Austrian v. Williams, D.C., 103 F.Supp. 64, 116. Reference to that opinion will be adequate for present purposes to show what they were. In respect to transactions C, I and L, a money judgment was entered; transaction B was rescinded and a rather complicated method for accomplishing that was provided with an alternative money judgment. Interest was allowed at the rate of 4% up to the date of the judgment and thereafter at the rate of 6% and the plaintiffs have appealed from so much of the judgment as did not provide for interest at 6% for the period prior to the entry of the

judgment. But, as will be seen, we do not reach that question.

The statute of limitations was pleaded as a defense to each of the transactions here involved and the court found, on undisputed evidence, that "The interdicted acts occurred in 1927 and 1929." Moreover, it was recognized, citing Zwerdling v. Bent, 291 N.Y. 654, 51 N.E.2d 933, that "under a recent decision of the New York Court of Appeals the claims herein would have been barred before the date of adjudication." [1] As we hold that this defense is sufficient, we do not find it necessary to deal with the contention of the appellant that there should also be a reversal on the merits.

The controlling statute is Section 11, sub. e of the Bankruptcy Act, 11 U.S.C.A. § 29, sub. e, which provides in pertinent part:

"A receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitations fixed by Federal or State law had not expired at the time of the filing of the petition in bankruptcy. * * *"

These causes of action accrued between fifteen and thirteen years before the filing of the petition.[2] Since the federal statute above quoted incorporates by reference the applicable state statute of limitations, the court held that the New York statute applied. This was correct because it is undisputed that these causes of action were created by state law, National Mut. Ins. Co. v. Tidewater Transfer Co., 337 U.S. 582, 598–599, 69 S.Ct. 1173, 93 L.Ed. 1556, and, though the causes of action may have arisen under Virginia law since Central is a Virginia corporation with its prin-

1. There was some dispute concerning whether the six-year statute, N.Y.Civ. Prac.Act § 48(3), or the ten-year provision of § 53 applied but, since both had run prior to the filing of the petition for reorganization, 11 U.S.C.A. § 29. sub. e, it is immaterial which applies and we will assume the longer period governs.

2. We need not consider whether the action was timely commenced within "two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit * * *", 11 U.S.C.A. § 29, sub. e, since, if the action was not barred prior to the filing of the petition, it was brought within the period allowed by state law.

cipal place of business in that state, Restatement, Conflicts of Law, § 187, the applicable statute of limitations is that the law of the forum, Id., § 603; Goodrich, Conflicts of Law, page 240 (3rd ed., 1949). The forum being a federal court sitting in a federal district in New York, the state law which applies to these causes of action under Section 11, sub. e of the Bankruptcy Act, in accordance with this conflict of laws' principle, is the law of New York.[3]

However, while the court below held that the New York statute of limitations was applicable, the statute was not applied in the same way that the New York courts would have applied it. The New York courts have held that "The statute begins to run from the date of the commission of each separate wrongful act alleged in each cause of action regardless of the date of the discovery or of the continuance in control by [the officers and directors of the corporation]." Pollack v. Warner Bros. Pictures, Inc., 266 App.Div. 118, 41 N.Y.S.2d 225, 226. See also Hastings v. H. M. Byllesby & Co., 293 N.Y. 404, 57 N.E.2d 733; Laird v. United Shipyards, Inc., 2 Cir., 163 F.2d 12, certiorari denied 332 U.S. 842, 68 S.Ct. 264, 92 L.Ed. 413. Instead of adopting this construction of the state statute, the court construed it in accordance with the federal equitable rule which suspends the running of statutes of limitations while the party "injured by fraud * * * 'remains in ignorance of it without any fault or want of diligence * * * on his part, * * * though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.'" Bailey v. Glover, 21 Wall. 342, 348, 22 L.Ed. 636. Cf. Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 585, 90 L.Ed. 743. And this federal doctrine is extended to include the period during which the corporation continues under the domination of the wrongdoers.

Michelsen v. Penney, 2 Cir., 135 F.2d 409; Dabney v. Levy, 2 Cir., 191 F.2d 201, certiorari denied 342 U.S. 887, 72 S.Ct. 177. Under this rule the statute of limitations did not begin to run until the domination of Central by Williams was ended and this did not occur until the filing of the petition for reorganization, in 1942. Consequently, the court held that this suit was timely commenced.

The decisive issue presented, therefore, is whether a federal court may apply this federal equitable rule in construing a state statute of limitations which Congress has directed be applied in a situation like this in determining whether a cause of action was barred before any petition for reorganization was filed.

The refusal of the district court to follow the New York courts' interpretation of the New York statute of limitations was due largely to the assumption that, since federal jurisdiction was conferred by the Bankruptcy Act, Williams v. Austrian, 331 U.S. 642, 67 S.Ct. 1443, 91 L.Ed. 1718,[4] it was not compelled to reach its decision in conformity with state decisional law as it would if diversity of citizenship was the basis of jurisdiction. Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079. Further, it was thought necessary to apply the federal equitable doctrine of Bailey v. Glover, supra, to further the purposes of, and achieve uniformity in the application of, the Bankruptcy Act. We do not agree.

The fact that diversity jurisdiction is lacking does not, alone, preclude a result similar to that which would be reached if there were such jurisdiction. Though it may be true that the rationale of Guaranty Trust Co. v. York, supra, and Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, is inapplicable where a federal statute or a federal interest is involved, D'Oench, Duhme & Co. v. F. D. I. C., 315

3. Cf. Cope v. Anderson, 331 U.S. 461, 67 S. Ct. 1340, 91 L.Ed. 1602.

4. This decision was from an earlier appeal in these same proceedings in which the jurisdiction of the district court was contested. The Supreme Court held that

Section 2 of the Bankruptcy Act, 11 U.S. C.A. § 11, established "the jurisdiction of federal courts to hear plenary suits brought by a reorganization trustee, even though diversity or other usual ground: for federal jurisdiction is lacking." 331 U.S. at page 658, 67 S.Ct. 1451.

U.S. 447, 62 S.Ct. 676, 86 L.Ed. 477; Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838, there may be other reasons to support, or require, the same result. Here there is such another reason provided by Section 11, sub. e of the Bankruptcy Act. See 1 Collier, Bankruptcy, Page 104 (Cum.Supp., 1951). This provision expressly precludes the trustee in bankruptcy (or reorganization) from bringing suit upon "any claim against which the period of limitations fixed by * * * State law" has expired at the time of the filing of the petition in bankruptcy. Herget v. Central Nat. Bank & Trust Co., 324 U.S. 4, 65 S.Ct. 505, 507, 89 L.Ed. 656. And, this is consonant with Section 70 of the Bankruptcy Act, 11 U.S.C.A. § 110, which equates the right of the trustee with that of the bankrupt. This clear mandate to apply the state limitations statute in a case like this includes its application in the manner established by other relevant provisions of state law, N.Y.Civ.Prac.Act § 11,[5] and state court interpretations of state law, Pollack v. Warner Bros. Pictures, Inc., supra. Certainly, both are as much state law as is the particular statute which sets forth the number of years within which actions are to be brought. When New York enacted Section 53 of the Civil Practice Act it did not merely prescribe a ten-year period within which suit must be brought to avoid being barred; it enacted a comprehensive statutory scheme to further what was thought to be a worthwhile legislative objective, and what the

details of this scheme were are what the New York courts have decided they are. We hold that this statutory scheme, as interpreted by the New York courts, is what is incorporated in Section 11, sub. e of the Bankruptcy Act and it is this composite which federal courts are directed to apply.[6]

Much reliance is placed upon Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743, to support the judgment. That case was an action to enforce liability under the Federal Farm Loan Act, 12 U.S.C.A. § 812, against a stockholder who had concealed his ownership of stock upon which it was alleged he was liable under the Act. It was held that the New York statute of limitations applied to determine the timeliness of the suit because there was no applicable federal statute of limitations, Campbell v. Haverhill, 155 U.S. 610, 15 S. Ct. 217, 39 L.Ed. 280; Chattanooga Foundry & Pipe Works v. Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241, and that the federal equitable doctrine of Bailey v. Glover, supra, was superimposed on the state statute. In Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 583, however, the state statute of limitations was being applied to a federally created cause of action while here the cause of action is state created. This distinction as to the source of the cause of action was emphasized by the Supreme Court in distinguishing Guaranty Trust Co. v. York, supra:

"But in the York case we pointed out with almost wearisome reiteration,

---

**5.** Section 11 provides that the only matters which suspend the running of the limitation period are those "specifically prescribed" in the statute itself. Some twenty-odd exceptions are specified in the Act but none of these include "domination" or "control" of a corporation by the defendants.

**6.** We have found no cases expressly deciding this point with reference to the Bankruptcy Act but the following cases do indicate the result we have reached: Harrigan v. Bergdoll, 270 U.S. 560, 46 S.Ct. 413, 70 L.Ed. 733; Hummel v. Equitable Life Assur. Soc., 7 Cir., 151 F.2d 994; Isaacs v. Neece, 5 Cir., 75 F.2d 566. See Bovay v. H. M. Byllesby & Co., 27 Del. Ch. 33, 29 A.2d 801. Not without relevance, also, is Guaranty Trust Co. v.

York, supra, and other cases following the Erie doctrine since what was there decided was the proper interpretation to be given the words, "The laws of the several states" in the Rules of Decision Act, Section 34 of the Judiciary Act of 1789, as amended, 28 U.S.C. § 1652. It was held that this language meant not just the wording of the state statutes but also the state decisional law. But even before the Erie case, when the federal courts applied state statutes of limitations they looked to, and felt bound by, the construction placed upon such statutes by the state courts. E.g., Bauserman v. Blunt, 147 U.S. 647, 13 S.Ct. 466, 37 L.Ed. 316; Benedict v. City of New York, 250 U.S. 321, 39 S.Ct. 476, 63 L.Ed. 1005. See Cope v. Anderson, supra.

in reaching this result, that we were there concerned * * * with State-created rights. * * * The considerations that urge adjudication by the same law in all courts within a State when enforcing a right created by that State are hardly relevant for determining the rules which bar enforcement of an equitable right created not by a State legislature but by Congress." 327 U.S. at page 394, 66 S.Ct. 583.

And, at page 397 of 327 U.S., at page 585 of 66 S.Ct: "We conclude that the decision in the York case is inapplicable to the enforcement of federal equitable rights." The mere fact that jurisdiction is based upon a federal statute does not impart to the cause of action a federal derivation, and we think, therefore, that the Holmberg case is to be distinguished from this one.

Nor are we persuaded by the argument that the application of the doctrine of Bailey v. Glover is necessary to the uniform administration of the Bankruptcy Act. In the first place, there is no indication that uniformity in the sense here urged was intended. On the contrary, the indications are that Congress intended to make "State law," as we have construed that term, applicable in this instance and left uniformity in the administration of the Bankruptcy Act to be secured by making the application of state law uniform. Furthermore, even if the district court's interpretation of state law is accepted, it would not bring to any large degree the uniformity thought requisite, for there can be no escape from the diverse periods of limitations set up in the various state statutes which are applicable however they are construed.

■ One further point warrants discussion. It is that one of the purposes for conferring upon the trustee in reorganization broad investigatory powers and the duty to prosecute causes of action in favor of the debtor was not merely to marshall the debtor's assets, but also to aid in the exposure of corporate abuses.[7] It is urged that such a purpose could be carried out efficiently only if the rule of Bailey v. Glover were made to apply since, otherwise, alleged wrongdoers could escape without liability merely by concealing their tortious conduct beyond the period of limitations. There is such a possibility but, since the general rule as to state statutes of limitations is consonant with the federal equitable doctrine, Developments in the Law—Statutes of Limitations, 63 Harv.L.Rev. 1177, 1220 (1950), it may well be that Congress felt the likelihood of abuse too small to make any distinction in respect to the very few states which are in accord with the New York rule. What seems more likely is that Congress did intend to utilize the bankruptcy procedure to expose corporate abuses and, therefore, gave to the trustee sufficient time after his appointment to permit him to investigate the situation and to prosecute any causes of action thus found to exist. But this purpose did not include the revival of causes of action which, under the various applicable statutes of limitations, were barred. We think that the desirability of the repose policy of the state limitations periods was intended to be recognized by Congress and given effect in the manner in which the various states saw fit to make this policy effective. If this be not the purport of Section 11, sub. e, then its effect would be to revive, or create, causes of action, a concept without any reasonable basis.

■ We hold, therefore, that the proper interpretation to be given Section 11e is that the state statutes of limitations must be applied as interpreted by the state courts. Consequently, this suit was barred by the applicable New York statute before the Chapter X petition was filed.

Judgment reversed with directions to dismiss the complaint.

CLARK, Circuit Judge (dissenting).

I dissent from the holding that the New York Statute of Limitations is a bar on substantially the grounds so ably developed below, 103 F.Supp. 64, 110–117. Summarily stated, they are that the Erie-Tompkins doctrine does not control bankruptcy law, and that under that law, and in accordance

7. Williams v. Austrian, 331 U.S. at page 657, 67 S.Ct. 1443, 91 L.Ed. 1718.

with the usual law in this country, concealment of a cause of action prevents the running of the statute. As well stated in a note in 38 Virginia Law Review 680 (quoted in 128 N.Y.L.J. 198, August 5, 1952) in approving the holding below: "But the question arises as to why Congress conferred jurisdiction on the federal courts to hear suits by trustees if such courts are merely to be 'ventriloquists' dummies' for the state courts. The theory behind diversity jurisdiction, that prejudice exists against non-residents, certainly does not apply here. On the contrary, as the court in the instant case correctly pointed out, the purpose of the Bankruptcy Act in conferring jurisdiction on the federal courts was to establish uniformity where the trustee is suing multiple defendants in the same cause of action. It is submitted that the Erie rule should be limited to cases such as those based on diversity in which there is no need for nationwide uniformity."

It should be stressed that this decision breaks new ground—that nothing in the exposition of the Erie doctrine to date compels it, while the various intimations limiting that doctrine to diversity cases point the other way. The nub of the decision here appears to rest on the contention that the peculiar New York doctrine had already barred the action before the reorganization proceedings were commenced. This seems to me an inadmissible premise. What we are dealing with is an asset of a Virginia corporation now in the bosom of a Virginia federal court. The asset is an equitable right of accounting, based on ancient chancery principles, against a defaulting fiduciary. It is no more a New York created right than it is a Virginia or some other state created right. The action is transitory and would follow Williams wherever he went. To consider that a man of his large interests never left New York, was never suable elsewhere, seems absurd. How then could he obtain this absolute immunity from suit which is now made the basis for this radical extension of the Erie doctrine? Compare Chase Securities Corp. v. Donaldson, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628.