Stephen Laurence CARMALT (Veteran's Reemployment Rights), Petitioner,

v.

GENERAL MOTORS ACCEPTANCE CORPORATION, a New York Corporation, Respondent.

Civ. A. No. 60-330.

United States District Court
W. D. Pennsylvania.

Aug. 7, 1961.

Stephen Laurence Carmalt in pro. per.

John G. Wayman, Pittsburgh, Pa., for defendant.

GOURLEY, Chief Judge.

This is a veteran's action for damages and/or reinstatement to former employment under the Selective Service and Training Act of 1940, 50 U.S.C.A. Appendix, § 459(g) (4).

Although dealing with a veteran with an exemplary military background, the trial was fraught with much bitterness and unusual and extraordinary difficulties. The veteran insisted on his right to proceed to trial without aid of legal counsel although the Court, in consultation with the President of the local Bar Association, encouraged the veteran to permit legal counsel to extend aid and assistance. Accordingly, divers unorthodox procedures and trial supervision were required.

The veteran was stationed at Pearl Harbor at the time of the merciless and infamous bombardment by the Japanese on December 7, 1941. The veteran's valor and extraordinary courage in the face of overwhelming odds exemplified a most commendable devotion and dedication to American freedom. His honorable discharge certificate reflects the following:

"Headquarters 17th Air Base Group (Reinforced) Office of the Group Commander

"Hickam Field, T.H., December 12, 1941

"Subject: Commendation

"To: The Officers and Men of the 17th Air Base Group (Reinforced).

"This Copy For: Private Stephen L. Carmalt.

"1. You have just experienced what was for practically all of you

a first baptism of fire when we were so treacherously raided on Sunday, December 7, 1941, by units of the Japanese Air Force. Certainly no troops in the world have ever been placed at more disadvantage than were you on this occasion. With no warning and with very few weapons available you were attacked vigorously and relentlessly by a determined foe.

"2. Your actions at that time and at all times since have been highly commendable. You fought valiantly against a foe who had superiority in everything but courage. In total disregard of personal safety you fought back with any weapons you could find. Your cool headed bravery in the operation of these weapons succeeded in inflicting considerable losses on your attacker. Since the attack you have worked long hours and have conducted yourselves admirably.

"3. I commend you most highly for the splendid spirit and high courage you have shown.

Wm. L. Boyd
Lt. Col., Air Corps
Commanding"

A review of the record and all exhibits requires the conclusion that at the time the veteran entered the service of his country he was an employee of the defendant and that subsequently, upon discharge from military service, he requested reinstatement to his former employment.

The veteran was able and competent to perform the type of employment that he pursued at the time of his entry in the military service and the defendant, without cause or justification, refused the veteran reinstatement to employment when the veteran was physically and mentally qualified to pursue tasks and responsibilities that might be assigned.

It is to the credit of the veteran and to the undoubted benefit of the defendant that he applied great diligence after the defendant refused to grant him reemployment to secure remunerative employment with other persons during the period that a legal obligation was owed the veteran for reemployment by the defendant.

The defendant advances the legal thesis that since a delay in filing said action of approximately seventeen years has expired, the complaint should be dismissed on grounds of laches. It is noteworthy, however, that since October 9, 1945, the hiatus was created by the veteran's disability wherein he was rendered 100 per cent incompetent.

█ A Federal Court, sitting in equity, will be guided by state statutes of limitations, though not bound thereby, in determining whether suit should be dismissed for laches, Benedict v. City of New York, 250 U.S. 321, 39 S.Ct. 476, 63 L.Ed. 1005. In this connection, I shall take judicial notice of Pennsylvania law which permits persons under disability to bring an action after the removal of such disability, 12 Pa.P.S. § 35. Just as incompetency tolls the operation of the statute of limitations against an incompetent, it would follow as a necessary corollary that the doctrine of laches would not have application to an incompetent during his period of incompetency, Williams v. Williams et al., 7 Cir., 61 F.2d 257.

█ Upon evaluating the question of what prejudice, if any, has been suffered by the defendant as the result of the extended delay in filing suit, I find additional reason not to invoke laches against the plaintiff. Defendant was on notice of plaintiff's request for reemployment from the very inception of his discharge from the military service and, being presumed to have knowledge of the law, defendant in no way was subjected to any prejudice by the delay nor is there any evidence that the passage of time has in any way compromised defendant's ability to present its defense, Walker v. Mummert, 394 Pa. 146, 146 A.2d 289.

■ The law is settled that laches will not be imputed to a plaintiff where no injury results to defendant by reason of the delay, Lutherland, Inc. et al. v. Dahlen et al., 357 Pa. 143, 53 A.2d 143.

■ A most difficult and enigmatic problem exists, however, as to the amount of recovery to which the veteran is entitled. As a result of the harrowing experiences at Pearl Harbor and while valuably rendering further service in the islands of the South Pacific, the mental and physical pressures to which the veteran was subjected resulted in a gradual development of a condition which resulted in the Veteran's Administration declaring and determining on October 9, 1945, a 100 per cent service connected disability. I must conclude, therefore, that since October 9, 1945, the veteran is entitled to no recovery against the defendant for money damages nor can an order be entered which would require the defendant to reemploy the veteran. However, for the period from the date of discharge on April 21, 1943, until the date of the determination of permanent and service connected disability on October 9, 1945, I conclude that the veteran could have earned, if he had been reemployed by the defendant, the amount of $5,467.50 based upon his maximum earning capacity in said employment, Loeb v. Kivo et al., 2 Cir., 169 F.2d 346. During said period, based on the employment which the veteran pursued and as best I can evaluate all the evidence, the veteran earned in other employment the amount of $3,700 to which amount the defendant is entitled a credit or set off. Thus the veteran is entitled to payment of $1,767.50 due to the arbitrary refusal of the defendant to reemploy the veteran without basic cause or justification. In addition, I believe interest at the rate of 6 per cent per annum should be paid from April 21, 1943, to the date of payment. Where a veteran is denied the right to reemployment without cause or justification and where the veteran physically and mentally is able to perform the type of employment which he pursues at the time of his entry into military service, interest is properly allowed in damages, Travis v. Schwartz Manufacturing Company, 7 Cir., 216 F. 2d 448.

The Court enters the following Findings of Fact:

1. On March 25, 1940, Stephen Laurence Carmalt (hereinafter called Carmalt) filed a written application for employment with the Pittsburgh Branch of General Motors Acceptance Corporation (hereinafter called "G.M.A.C.").

2. Carmalt returned immediately after Christmas and was interviewed by each man on the Executive Committee in accordance with the practice at the branch.

3. Carmalt was hired as a field representative as of December 30, 1940 at a probationary salary of $110 per month, to be increased to $125 per month May 1, 1941 if his work proved to be satisfactory.

4. A field representative represented G.M.A.C. in dealing with customers who were delinquent in their payments.

5. On April 11, 1941, Carmalt enlisted in the United States Army Air Corps.

6. April 10, 1941 was the last day Carmalt worked for G.M.A.C. He was paid his salary up to April 14 and received his accrued vacation pay of $25.-67. He did not receive any separation pay.

7. Carmalt enlisted in the military service on April 11, 1941 and was honorably discharged on April 17, 1943.

8. Carmalt was sent to the Territory of Hawaii by the Air Force. In February, 1942 he sent a letter to his employer describing the attack on Hickam Field on December 7, 1941 and the things he did there.

9. The April, 1942, Edition of the "Call to Service," a publication of the General Motors Acceptance Corporation devoted to reporting of activities of em-

ployees in the military service, states as follows:

"Headquarters 17th Air Base Group (Reinforced)

"Office of the Group Commander Hickam Field, T.H., December 12, 1941

"Subject: Commendation

"To: The Officers and Men of the 17th Air Base Group (Reinforced).

"This Copy For: Private Stephen L. Carmalt.

"1. You have just experienced what was for practically all of you a first baptism of fire when we were so treacherously raided on Sunday, December 7, 1941, by units of the Japanese Air Force. Certainly no troops in the world have ever been placed at more disadvantage than were you on this occasion. With no warning and with very few weapons available you were attacked vigorously and relentlessly by a determined foe.

"2. Your actions at that time and at all times since have been highly commendable. You fought valiantly against a foe who had superiority in everything but courage. In total disregard of personal safety you fought back with any weapons you could find. Your cool headed bravery in the operation of these weapons succeeded in inflicting considerable losses on your attacker. Since the attack you have worked long hours and have conducted yourselves admirably.

"3. I commend you most highly for the splendid spirit and high courage you have shown.

Wm. L. Boyd
Lt. Col., Air Corps
Commanding"

10. The veteran requested reemployment with the defendant on April 21, 1943.

11. On April 21, 1943, Carmalt went to Wheeling, West Virginia, where he reported to his draft board.

12. Shortly after May 1, 1943, Carmalt obtained a job through the West Virginia State Employment Service at Bell Alkali, in Charleston, taking rust off chlorine tanks, painting and rolling around drums of chlorine. He quit the job after working there ten days for the reason that the work was too heavy in view of his back condition.

13. The West Virginia State Employment Service then sent him to Barium Reduction Corporation in Charleston, West Virginia, where he obtained employment as a helper or sample boy in the laboratory. He gave up this employment on June 2, 1943, by reason of his back condition.

14. On July 7, 1943, Carmalt obtained employment at Libby-Owens-Ford as a payroll clerk.

15. Carmalt continued to work at Libby-Owens-Ford. In September, 1943, the Veterans Administration ordered him to report to Huntington, West Virginia, for an examination in connection with his disability claim. He did so. Following this examination he was rated 10 per cent disabled from April 28, 1943.

16. About November 7, 1943, Carmalt quit his job at Libby-Owens-Ford, giving as his reason that he felt the attitude of the people at Libby-Owens-Ford was hostile, as a result of his reporting an employee for alleged incompetence.

17. Very shortly after he left Libby-Owens-Ford, Carmalt went to work taking care of books and accounts for an individual, Lawrence J. Frankel, who operated a clothing store in Charleston. Frankel opened a small store in Nitro, West Virginia, and put Carmalt in charge, but said business failed.

18. On Christmas Day, 1943, Carmalt returned to Pittsburgh. He contacted the Pennsylvania State Employment Service which sent him to the American Bridge Company in Leetsdale, Pennsylvania, where he obtained a job as comptometer operator some time during the first week of January, 1944.

19. Carmalt worked at American Bridge until early February, when he

complained of trouble with his back and entered the Veterans Administration Hospital at Aspinwall, Pennsylvania.

20. On February 15, 1944, he was rerated as of February 1, 1944, from 10 per cent to 50 per cent disabled

21. It appears that considerable disability which the veteran experiences stems from a spinal tap which he underwent in the military service which caused him considerable pain in the lower back when attempting to perform any type of labor which requires the use of the back.

22. After his release from the hospital, Carmalt returned to American Bridge as a timekeeper and continued to work there until the early part of March, 1945, when he was released due to a reduction of the staff.

23. Within three or four days following his release, Carmalt again went to the Pennsylvania State Employment Service which referred him to Crucible Steel Company of America. He was given a physical examination and passed with no limitations and was hired as a steel weigher.

24. While working at Crucible he complained to the Company about a crane operator who he said couldn't see well enough to judge distances and who should be given an eye examination or be discharged. When the other workmen found out about this, they didn't like it and Carmalt decided he had better quit, which he did in June, 1945.

25. Carmalt then obtained a job with the First National Bank in Pittsburgh in the transit department beginning about July 17, 1945.

26. On October 9, 1945, Carmalt, after further examination, was rerated 100 per cent disabled for reasons disclosed in the Veterans Administration file.

27. On December 23, 1945, Carmalt was discharged by First National Bank for reasons not disclosed on the record, which was the last date that Carmalt performed any remunerative employment.

28. The maximum wage scale of the General Motors Acceptance Corporation of a collector from April 21, 1943, until February 1, 1944, was $185, Per month.

29. The maximum wage scale of the General Motors Acceptance Corporation of a collector from February 1, 1944, until October 9, 1944, was $197, Per month.

The Court enters the following Conclusions of Law:

1. Defendant owed a legal duty to reemploy the veteran on April 21, 1943, under the provisions of the Selective Service and Training Act, 50 U.S.C.A. Appendix, § 459(g) (4).

2. Plaintiff's delay in pressing suit is excused by reason of the veteran's 100 per cent disability commencing October 9, 1945.

3. The veteran is entitled to payment of the maximum wage scale that he would have received as a collector from April 21, 1943, until October 9, 1945, less amounts earned by the veteran during said period plus legal interest.

An appropriate order is entered.

### Order

And Now, This 7 day of Aug. 1961, the claim of the veteran, Stephen Laurence Carmalt, for damages against the defendant, General Motors Acceptance Corporation, during any period from October 9, 1945, is denied. The claim of the veteran for reemployment with the defendant in the type of employment which he pursued at the time of his induction in the military service for employment of a similar nature is denied for the reason that the veteran is permanently and totally disabled and not suitable or fit for reemployment by the defendant.

A judgment is entered in favor of the plaintiff, Stephen Laurence Carmalt, and against the defendant, General Motors Acceptance Corporation, in the amount of $1,767.50 with interest at the rate of 6 per cent per annum from April 21, 1943, to the date of payment.