Rosalind FOGEL and Gerald Fogel,
Plaintiffs,

v.

George A. CHESTNUTT, Jr., et al.,
Defendants.

No. 67 Civ. 60.

United States District Court
S. D. New York.

Feb. 19, 1969.

Pomerantz, Levy, Haudek & Block, New York City, for plaintiffs; Abraham L. Pomerantz, Richard M. Meyer, Daniel W. Krasner, New York City, of counsel.

Willkie, Farr & Gallagher, New York City, for defendant I.O.S., Ltd. (S.A.); Allan F. Conwill, Howard S. Klotz, New York City, of counsel.

O'Connor & Farber, New York City, for defendants American Investors Corporation, George A. Chestnutt, Jr., and Warren K. Greene.

Carro, Spanbock & Londin, New York City, for defendant Jesup & Lamont.

Royall, Koegel, Rogers & Wells, New York City, for defendant American Investors Fund, Inc.

EDWARD WEINFELD, District Judge.

The defendant I.O.S., Ltd. (I.O.S.) moves for summary judgment dismissing this derivative stockholders' action brought on behalf of American Investors Fund, Inc. (the Fund) under the Investment Company Act of 1940, 15 U.S.C. sections 80a–1 et seq. (the Act). I.O.S.

contends that with respect to three issues, which constitute the hard core of plaintiffs' claims, there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. I. O.S., relying upon pretrial depositions and interrogatories, contends plaintiffs, with respect to those issues, have made no showing to support their claims, directly, indirectly or inferentially. Plaintiffs, relying upon the same material, contend to the contrary that each of the three issues centers about disputed facts or permissible inferences from established facts which require resolution upon a trial on the merits. The issues, in substance, are:

(1) Did I.O.S. control or dominate the Fund with respect to brokerage orders?

(2) Did the Fund, by reason of such control or domination, execute portfolio transactions with Jesup & Lamont, which generated substantial brokerage commissions?

(3) Did I.O.S., by reason of such transactions, obtain benefits from Jesup & Lamont, directly or indirectly, whether cash or services, of which the Fund was deprived to its substantial damage?

█ I.O.S. owned 166 out of 350 shares of the voting stock of The Fund of Funds, Ltd. (FOF), a defendant. Thus, it had presumptive control of FOF, section 2(a) (9) of the Act, 15 U. S.C. section 80a–2(a) (9). Plaintiffs' position is that I.O.S. directed the allocation of the brokerage to Jesup & Lamont through I.O.S.'s control and domination of FOF, which in turn had presumptive control of the Fund, since it owned over 27% of the Fund's voting stock and was its largest stockholder. Additionally, plaintiffs contend that I. O.S. also exercised control of the Fund through FOF under section 2(a) (9) of the Act, which also provides: " 'Control' means the power to exercise a controlling influence over the management or policies of a company * * *."

I.O.S. contends that as a matter of policy the Fund's portfolio transactions were allocated to Jesup & Lamont under a reciprocal arrangement recognized by the industry to favor broker-dealers who assist in the sale of Fund shares. The percentage of transactions awarded to Jesup & Lamont was 31%, which generated brokerage commissions to it in excess of $370,000 over the period referred to in the complaint. Plaintiffs contend, and defendant denies, that this policy decision was dictated by I.O.S. by reason of its control of FOF. While I.O.S. denies that it in any respect influenced or dominated the Fund directly or indirectly by virtue of its FOF control, it acknowledges "that representatives of I.O. S. merely suggested that Jessup & Lamont be used as a broker by the Fund * * *."

█ A "mere suggestion" by one who has voting control of FOF, which in turn presumptively controls the Fund, may carry with it the force of authority. At times, depending upon circumstances, a wink or a nod may convey meaning of deeper significance than the surface act. And so here the "mere suggestion" must be viewed in the light of all the surrounding circumstances; the relationship of the parties to one another; the relationship of directors and officials of the Fund to the directors of FOF and to those of I.O.S.; the right of FOF to redeem its holdings in the Fund and the force of that power, to mention but a few matters that may be considered by the trier of the fact. *Cf.* Austrian v. Williams, 103 F.Supp. 64, 73 (S.D.N.Y.), rev'd on other grounds, 198 F.2d 697 (2d Cir.), cert. denied, 344 U.S. 909, 73 S.Ct. 328, 97 L.Ed. 701 (1952). Nor is the issue of actual domination or control concluded by I.O.S.'s sworn disclaimer. *Cf.* Dyer v. MacDougall, 201 F.2d 265 (2d Cir. 1952). Neither does I.O.S.'s contention that the "suggestion" or that the "allocation" or "reciprocal arrangement" was "in line with industry practice" resolve the issue. *Cf.* Texas & P. Ry. v. Behymer, 189 U.S. 468, 470, 23 S.Ct. 622, 47 L.Ed. 905 (1903); The T. J.

Hooper, 60 F.2d 737, 740 (2d Cir.), cert. denied sub nom. Eastern Transp. Co. v. Northern Barge Corp., 287 U.S. 662, 53 S.Ct. 220, 77 L.Ed. 571 (1932). So, too, that the Fund's practice with respect to brokerage fees was set forth in a prospectus does not end the issue, since it was not disclosed that the benefits of the brokerage were to accrue to I.O.S. and not to the Fund, which is the gravamen of plaintiffs' charge.

■ But entirely apart from the issue of domination and control, another is so clearly fact ridden that it also requires denial of the defendant's motion. Plaintiffs charge that I.O.S. received as a result of the brokerage allocation to Jesup & Lamont certain benefits that should have gone to the Fund, and that I.O.S.'s receipt thereof was a conversion of the Fund's property. One such item was research, investment advisory and investment banking service said to be valuable. I.O.S. contends that this is an ordinary service rendered by brokers to customers and was furnished to it by Jesup & Lamont independently of the Fund's brokerage. But plaintiffs say that the Fund paid others substantial amounts for such advisory services when it should have obtained the same services without cost from Jesup & Lamont. Whatever its value, whether the Fund instead of I.O.S. should have been the beneficiary thereof, the reasons why the services were made available to I.O.S. and not to the Fund are clearly not for disposition on a summary judgment motion. Indeed, there are other claims of diversion, such as failure to execute portfolio transactions at lower cost and, where feasible, to recapture brokerage through directed give-ups. There is also the charge that I.O.S. received cash kickbacks with respect to the brokerage commissions from Gloria M. Clapp, the registered representative of Jesup & Lamont, who received 60% of the gross commissions generated by the Fund. Part of the monies were deposited with the Fiduciary Trust Company of Nassau in the Bahamas, from which it is further alleged they were transferred to or loaned to affiliated banks of I.O.S. in the Bahamas. Attempts to inquire further into the matter and the relationship between the I.O.S. affiliated banks and the Fiduciary Trust were blocked upon a plea of the Bahamas banking secrecy laws. The inference, if any, to be drawn from this circumstance is for the trier of the fact. *Cf.* Societe Internationale v. Rogers, 357 U.S. 197, 213, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); and see Schoenbaum v. Firstbrook, 405 F.2d 215 (2d Cir. 1968) (en banc).

The motion is denied.