**RIESER et al.**

v.

**BALTIMORE & O. R. CO.**

United States District Court
S. D. New York.

June 30, 1954.

Louis Boehm and Nathan B. Kogan, New York City (Louis Boehm, Victor House, Spencer Pinkham, New York City, of counsel), for plaintiffs.

Louis H. O. Fischman, New York City, for intervening plaintiffs.

Cravath, Swaine & Moore, New York City (Ralph L. McAfee, George M. Billings, Edward C. Perkins, New York City, of counsel), for defendant.

MURPHY, District Judge.

This is a motion made by defendant, The Baltimore and Ohio Railroad Company, for summary judgment pursuant to Rule 56(b), Federal Rules of Civil Procedure, 28 U.S.C.A., dismissing the consolidated amended complaint. The motion is made upon the ground that the complaint, and all the claims alleged in it, are barred either by the New York statute of limitations of three years [1] or six years.[2] In the alternative, defendant moves for dismissal of all claims accruing prior to May 7, 1942, as barred in any event by the New York ten-year period of limitations.[3]

The complaint undertakes to state a claim in the nature of a representative class suit by former bondholders of the Alton Railroad Company (hereinafter called the Alton). The gist of the complaint is that, during the period January 7, 1931 through November 25, 1942, when defendant owned and controlled all the voting stock in the Alton, it so mismanaged the affairs of that railroad, while favoring its own interests, as to cause the Alton to become insolvent.

Such mismanagement, it is alleged, made necessary a reorganization of the Alton, under Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, in which the Alton bondholders realized only $375 for each $1,000 principal amount of bonds. In the reorganization proceeding the claim on the Alton bonds was allowed in the full amount, so that plaintiffs assert that they are judgment creditors whose proven claim has been only partially satisfied. Plaintiffs apparently sue in the capacity of creditors in aid of execution on their debtor's claim against defendant: *viz.*, the Alton's claim for damages due to the alleged mismanagement during the period of defendant's control.

Jurisdiction is alleged on the ground of diversity of citizenship, defendant asserted to be a Maryland corporation, and plaintiffs to be citizens of states other than Maryland.

The complaint sets forth two separately stated claims with material allegations all stated in the first count which seeks damages due to alleged mismanagement of the Alton. The second count repeats the allegations of the first one and alleges that those facts also constituted a fraud upon the Alton and its creditors; that the action is one for fraud within the contemplation of the applicable internal time limitation of New York; and that plaintiffs did not discover the facts constituting such fraud until long after the commencement of certain reorganization proceeding. Defendant in its answer denies any wrongdoing or mismanagement with respect to the Alton and concedes that substantial issues of fact exist on this issue. Defendant's present motion is based entirely on the ground of time limitations and, for the purposes of deciding this motion, the factual allegations of the complaint must be taken as true.

Such allegations are of two sorts: (1) those relating to plaintiffs' rights as bondholders of the Alton; and (2) those

---

1. N.Y.C.P.A. § 49.

2. Id. §§ 47–a, 48(8).

3. Id. § 53.

relating to the alleged claim against the defendant.

(1) With respect to their rights as bondholders plaintiffs allege that they own bonds of the Alton which were secured by a mortgage constituting a first lien upon all of its assets. In April, 1941, the Alton defaulted in payment of interest on these bonds, and their entire principal amount then became due. On November 25, 1942, the Alton filed in the United States District Court for the Northern District of Illinois, and that court approved, a petition for reorganization under § 77 of the Bankruptcy Act, with order enjoining commencement of suits against the Alton or seizure of or interference with its property. A claim, filed in the reorganization proceeding on behalf of all bondholders by a trustee representing them, was allowed for the full amount of the bonds. Application, made on behalf of creditors in the reorganization proceeding to require the Alton's trustee to prosecute a claim against defendant for alleged mismanagement, or to permit the bondholders to do so was denied, and the injunction already mentioned remained effective until termination of the reorganization proceeding. In May of 1947, a consummation order and final decree was entered in the reorganization proceeding canceling the mortgage securing the Alton bonds and voiding the bond certificates. The Alton bondholders received securities of the purchasing corporation claimed to have had a market value of about $375 for each $1,000 principal amount. In addition, they were permitted to retain the bond certificates perforated with a legend reciting that the subject bond had been canceled for all purposes " * * except for purpose of evidencing right of the bearer or registered owner to a claim, if any, against The Baltimore and Ohio Railroad Company."

By reason of the foregoing, plaintiffs allege that they, and all other bondholders similarly situated, stand in the position of judgment creditors who have issued executions which have been satisfied to the extent of 37 cents on the dollar, and whose debtor, the Alton, has no other assets.

(2) With respect to their claim against defendant, plaintiffs allege that on January 7, 1931, defendant acquired all the voting stock of the Alton, and thereafter elected all its officers and directors. These are claimed to have acted as defendant's servants and in accordance with its directions and policies. Defendant's control of the Alton continued until November 25, 1942, when the Alton went into reorganization. During the period of its control, defendant is charged with having diverted revenue-bearing traffic from the Alton's lines to its own, and revenue-bearing interchange traffic from railroads with which the Alton had profitable business relations to railroads with which defendant had profitable business relations, thereby enriching defendant and damaging the Alton and its bondholders in the amount of $17,500,000.

Plaintiffs claim that defendant during this period failed to keep the Alton's rolling stock in repair, stored it on open side tracks where it became valueless. As a result the rolling stock is asserted to have been damaged to the extent of $19,500,000, and the Alton said to have lost an additional $5,000,000 which it would have earned as profits from its use.

Defendant is further charged during this time to have used the Alton's tracks, equipment and facilities without paying for such use, and having caused the Alton to repair defendant's rolling stock free of charge. Resulting damage to the Alton is claimed to have been $1,000,000.

Defendant is also claimed at this time to have diverted purchases of company equipment and supplies from potential shippers over the Alton's lines to potential shippers over the defendant's lines, thereby enriching defendant and damaging the Alton and its bondholders in the amount of about $3,000,000.

Plaintiffs say also that defendant within the period of their control caused the Alton to negotiate new contracts with three designated companies upon terms less favorable to the Alton and more

favorable to defendant, thereby enriching defendant and damaging the Alton and its bondholders in the amount of about $1,000,000.

It is claimed that defendant filed income tax returns in respect of the Alton's operations and its own for the years 1940 and 1941 upon a consolidated basis. During those years the Alton suffered a net operating loss of about $2,000,000 which defendant charged against its own profits for those years. Such losses could have been set off against profits said to have been made by the Alton during 1942 and 1943, with a consequent income tax saving to the Alton. That saving was lost to the Alton. In addition defendant is said to have discriminated against the Alton in dividing revenues derived from traffic interchanged between them, retaining an excessive proportion during its control.

Finally, defendant is charged with having deprived the Alton, by all of the foregoing acts, of its opportunity to improve its competitive position, thereby preventing it from capitalizing on its opportunities and from earning substantial net returns; and with having practiced, by all the foregoing acts, a fraud upon the Alton and upon the Alton bondholders, including plaintiffs.

The complaint seeks appointment of a receiver, judgment against defendant in the amount of at least $28,343,753, payment of plaintiffs' expenses, and distribution of the balance among Alton's bondholders.

In respect of time limitations, the answer sets up the three, six and ten-year periods under New York statutes as well as the five-year period under the Illinois statute.

The common law conflict-of-laws rule regarded the ordinary statute of limitations as procedural and consequently required choice as governing law of the forum's own period of limitation to the exclusion of any other.[4] The civil law of the continental courts has generally taken the contrary view that time limitations are substantive and accordingly require application of the period prescribed by the law of the place of the transaction rather than that of the forum. Some American cases have favored this view as more harmonious with factors significant for choice of governing law in a conflicts situation.[5] In New York the legislature early undertook to overrule the common law conflicts rule by adoption of a "borrowing" statute of limitations which made governing the internal period of limitation of the state of which the defendant was a resident at the time the action accrued.[6] Through a series of amendments,[7] this statute has evolved into its present form as a rule of alternate reference: for a cause of action which arises outside the forum either the time limitation of the forum or that of the state where the cause of action arose, is applicable in the case of non-resident plaintiffs, and only the time limitation of the forum in the case of resident plaintiffs. All plaintiffs must surmount the hurdle of the internal period of New York; non-resident plaintiffs must in addition surmount the hurdle of the period prescribed by the state where the cause of action arose. The Erie principle, controlling cases like the instant one where jurisdiction is based on diverse citizenship, requires application in this court of this statutory conflicts rule of choice of law as a constitutional mandate.[8]

4. Restatement, Conflict of Laws §§ 603, 604 (1934).

5. See LeRoy v. Crowinshield, C.C., D. Mass.1820, 15 Fed.Cas. page 362, No. 8,269, 2 Mason, 151; Davis v. Mills, 194 U.S. 451 at page 454, 24 S.Ct. 692, 48 L.Ed. 1067.

6. Cf. Miller v. Brenham, 68 N.Y. 83 with N. Y. Code of Civil Procedure § 390, effective May 1, 1877.

7. Code of Civil Procedure § 390a, added by N.Y.Laws, 1902, c. 193; Civil Practice Act § 13; N.Y.Laws 1943, c. 516.

8. Erie Ry. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.

Plaintiffs consist of a Rhode Island corporation, individual citizens of California and Rhode Island, and five residents of New York. With respect to the New York residents, only the internal period of New York is applicable; for the others, the New York time limitation, and, in addition, that of the state where the cause of action accrued, govern.

At the outset there are several problems: characterization of plaintiffs' claim; and determination whether or not under any applicable period of limitation the appropriately-classified claim is barred. With respect to the second question, there are additional issues: when does the applicable time limitation begin to run; and which one of several varying periods governs. Each separate problem does not merely add to the number of possible resolutions; it multiplies them. When it is realized that no single answer to any question is urged by either side, the magnitude of the geometric progression of possible solutions is manifest. For example, defendant contends that the claim may be viewed in three different perspectives: (1) as one by the bondholders against the Alton itself, forming the basis for a creditor's bill in equity against defendant; (2) as a claim of the Alton against defendant which they, as creditors, pursue by way of such a creditor's bill; and (3) as a claim by plaintiffs directly against defendant for an injury done to their security as bondholders.

Moreover, under defendant's first classification, alternate statutes of limitations are alleged to apply: one of six years relating to actions on bonds secured by a mortgage on real estate,[9] or another of similar duration governing actions upon contract obligations.[10] Under defendant's second qualification of the claim, it is urged that two additional periods of limitations in the alternative govern: the three year statute applicable to actions to recover damages for injury to property;[11] or a six year one for actions by a corporation against a former shareholder.[12] Defendant's third characterization would bar so much of the claim relating to acts prior to May 6, 1942, under still another limitation, the ten year equity statute.[13]

For their part plaintiffs insist that their claim is an "old-fashioned creditor's suit recognized by Courts of Equity almost from the beginning of equity jurisprudence." No statute of limitations, they argue, can begin to run until judgment on plaintiffs' claims in the bankruptcy proceedings on May 31, 1947, less than five years before commencement of the present action. Moreover, plaintiffs contend that no period of limitation shorter than six years is applicable, and actually the ten year equity statute running from 1947 is most appropriate.

The first major problem is the characterization, classification or qualification of plaintiffs' claim for purposes of time limitation. The juridical nature of plaintiffs' claim must be ascertained. Such characterization must be made under the Erie principle in accordance with the body of law in the conflicts area of the state in which this court sits. There is no indication that such classification varies between the body of law for conflict and that for internal purposes in New York. Accordingly, the qualification of plaintiffs' claim must proceed largely on decisional law in New York in non-conflict situations.

Two crucial questions are presented in the instant case: (I) From what time does *any* applicable period of limitation begin to run—from the date of default by Alton on plaintiffs' bonds in April 1941, from the time when defendant ceased control of Alton in November, 1942, or from the day the final order in the bankruptcy proceedings was entered in May, 1947; (II) What period of limitations governs—a three, one of several six year periods, a ten or even a

---

9. N.Y.C.P.A. § 47–a.

10. Id. § 48(1).

11. Id. § 49(7).

12. Id. § 48(8).

13. Id. § 53.

**50**

twenty year one. This question also involves consideration whether such period is tolled during the reorganization proceedings.

**I**

Viewing plaintiff's claim as one asserted as an asset of their debtor, Alton, which they may be entitled to enforce in a creditor's action in aid of some execution only partially satisfied in the bankruptcy proceedings, the question presented is whether any period of limitation applicable begins to run from April, 1941, or November 25, 1942, at which times plaintiffs' claim against Alton had clearly accrued, on one hand, or from May 31, 1947, when the final order in the bankruptcy proceedings was entered, on the other hand.

Two cases in point decided five years apart by the same court offer conflicting answers and require some detailed consideration. The first, Buttles v. Smith,[14] in 1939, was an action brought by a receiver, in February, 1938, as ancillary to sequestration proceedings on behalf of creditors of an insolvent corporation. The receivership proceedings had been instituted by one Anness in aid of execution on a judgment entered in 1933 which in turn had arisen out of an obligation incurred in 1926. The basis of the action was a series of alleged wrongful transfers alleged to have taken place in 1927 and 1929.

The complaint stated three separate causes of action, each to set aside alleged fraudulent diversions of corporate funds and for an accounting from defendants of property received by them. The claims were all statutory, under (1) § 15, New York Stock Corporation Law, McK.Consol.Laws, c. 59 (prohibiting transfers in contemplation of insolvency and making participating officers and directors personally liable to creditors to the extent of their direct loss); (2) § 274, New York Debtor and Creditor Law, McK.Consol.Laws, c. 12 (declaring fraudulent transfers making working capital inadequate for a specific business or transaction, as to persons becoming creditors during such business or transaction); and (3) § 60(5), New York General Corporation Law, McK.Consol. Laws, c. 23 (giving to creditors a right of action to set aside transfers made, with knowledge of the transferee, in violation of any law).

As to all three causes of action, the court held that the claim was one for an accounting in equity and not at law for damages, since it was one by a creditor attempting to follow funds of the corporation into the hands of persons to whom illegally transferred, and that the ten-year statute of limitations applied to plaintiff's claim.

As to accrual of the causes of action, the court differentiated the first and third from the second, holding that the second accrued at the time of the wrongful transfers, more than ten years prior to the beginning of suit, and was accordingly barred. The other two causes of action, it ruled, accrued only when judgment had been obtained by Anness and execution had been returned unsatisfied. Since this event was less than six years from the date of suit, it held those two causes of action not to be barred, either by the six-year or the ten-year statutes.

In the second case, Hastings v. H. M. Byllesby & Co.,[15] suit was brought in 1939 by a special trustee in bankruptcy proceedings to recover from defendant property of the debtor allegedly wasted or taken unlawfully from it, and to recover profits allegedly wrongfully appropriated. The complaint alleged that defendant Haystone conspired in June, 1925, to obtain large profits at the expense of the debtor corporation by means of transactions in which defendant received from the debtor valuable stock and large sums of money in exchange for property worth much less. These transactions took place in 1926. The debtor's petition in bankruptcy was filed in 1935.

14. 281 N.Y. 226, 22 N.E.2d 350.

15. 293 N.Y. 404, 57 N.E.2d 733.

The court affirmed the order of an intermediate appellate tribunal barring the action under the six-year statute of limitation running from March, 1926. The court distinguished the Buttles case on which plaintiff relied for his contention that the cause of action accrued upon his appointment as trustee in 1935, and not at the time of the alleged wrongful acts, in these terms:

"The plaintiff relies heavily upon our decision in Buttles v. Smith, 281 N.Y. 226, 22 N.E.2d 350. In that case we held that no cause of action to set aside transfers of corporate property made in violation of section 15 of the Stock Corporation Law, Consol.Laws, c. 59, or of subdivision 5 of section 60 of the General Corporation Law, Consol.Laws, c. 23, accrues to a creditor until the creditor has obtained a judgment and execution has been returned unsatisfied. The Statute of Limitations, we there said, does not commence to run against such a cause of action, asserted by a receiver appointed in a suit brought by a judgment creditor in aid of execution, until the cause of action accrues to the creditor. The gist of the creditor's cause of action, asserted in that case by a receiver appointed in an action brought by the judgment creditor for the sequestration of the property of a corporate debtor, was the illegal transfer of corporate assets which otherwise would have been available for the satisfaction of a judgment obtained by the creditor. No wrong is done by such a transfer to a creditor whose debt can be satisfied out of other assets of the debtor, and ordinarily a creditor may appeal to the courts to set aside an illegal transfer of the debtor only after he has obtained a judgment which he has been unable to enforce by execution. The wrong to the creditor by such a transfer of corporate assets is independent and distinct from any wrong to the corporate debtor, and in Buttles v. Smith, supra, the receiver, suing in behalf of a creditor, sought a remedy solely for the wrong done to the creditor. No wrong to the debtor was alleged in the complaint." [16]

Again with respect to plaintiff's claim "that here the trustee in bankruptcy is clothed with all the rights of a creditor with execution returned unsatisfied and is asserting in behalf of creditors a cause of action for the relief specified in subdivisions 1 and 2 of section 60 [of the General Corporation Law], just as in Buttles v. Smith the receiver asserted a cause of action in behalf of a creditor for the relief specified in subdivision 5 of the same section, and that the same rules fixing the time when the cause of action accrues and the statutory limitation begins to run must be applied to all actions brought in behalf of a creditor or creditors pursuant to the provisions of sections 60 and 61 of the General Corporation Law.", the court assumed *arguendo* that such was the case, but observed:

"Even so the fact remains that the cause of action is based upon a wrong to the debtor. The cause of action accrued to the debtor when the wrong occurred and though the statute permits a creditor or stockholder to bring an action for the wrong done to the corporation, the damage or injury to a creditor, like the damage or injury to a stockholder, arises only indirectly from the damage or injury to the corporation and is repaired when the damage or injury to the corporation is repaired. That, as we have pointed out, was not true of the cause of action asserted in Buttles v. Smith, 281 N.Y. 226, 22 N.E.2d 350, supra, under a different subdivision of the same section of the statute. The reasons which in that case required the conclusion that the cause of action there asserted accrued when execution was returned unsatisfied do not

16. 293 N.Y. at pages 410–411, 57 N.E.2d at page 735.

apply here—or perhaps even point to a different conclusion."[17]

It may be seriously questioned whether in fact the Buttles case represents a "wrong to the creditor * * * independent and distinct from any wrong to the corporate debtor," in contradistinction to the claim in the Hastings case which "arises only indirectly from the damage or injury to the corporation and is repaired when the damage or injury to the corporation is repaired." Both claims may well have stood on the same ground so far as their derivative or independent nature is involved. If so, then the Hastings case may not be distinguishable but may have overruled *pro tanto* the Buttles case. Yet if the varying result is explicable by comparative scrutiny of the precise language of the pleadings in the respective cases, and "No wrong to the debtor was alleged in the complaint" of the Buttles case, then that distinction controls in the instant situation. The language of this complaint indicates plaintiffs are asserting, not a claim of their own, but one which is an asset of their debtor Alton. For example, plaintiffs allege in paragraph 16 that they:

" * * * are in the position of creditors who have secured judgment establishing their claims and have issued executions which have been satisfied to the extent of 37½ cents in respect of each dollar of principal amount and otherwise returned unsatisfied."

And in paragraph 17 they allege:

"The claim asserted against the defendant in this action constitutes the only asset on which the unsatisfied claims of the holders of Alton Bonds may be satisfied."

Under either view of the Hastings case, whatever period of limitation is applicable to plaintiffs' claim, considered as a creditors' suit pursuing their debtor's assets, it must begin to run not later than November 25, 1942, the last possible date of accrual of any claim of the debtor against defendant.

If, however, it is possible to characterize plaintiffs' claim as one against the debtor corporation for a deficiency on the bonds, then it is clear that such claim accrued in April, 1941, the date of default.[18] Or should the claim be classified as one directly against defendant for injury done to plaintiffs' security under the mortgage securing the bonds, then the date of accrual would again be no later than November 25, 1942.[19]

It does not seem likely that the instant suit is one based upon a final order or decree rendered in the bankruptcy proceedings by the federal district court in Illinois in May, 1947. Even though under such order plaintiffs' claims as bondholders were allowed in full, they were not merged into judgment for the amount of the deficiency. Were such the case, a 20 year period[20] running from date of such order would be applicable, something not urged by plaintiffs. So far from merging plaintiffs' claims as bondholders, the order preserved such claims for pursuit by plaintiffs against their debtor's asset with respect to defendant. So far as such order relates to the deficiency, no mandate or execution could issue thereon, and this is a consideration of controlling importance in determining that this is not a suit upon a judgment of another court.[21]

Another characterization, viz., that of an "action to procure a judgment on the ground of fraud", would

17. Id. 293 N.Y. at page 411, 57 N.E.2d at page 736.

18. N.Y.C.P.A. § 47–a; State of Rio De Janeiro v. Rollins & Sons, 299 N.Y. 363, 87 N.E.2d 299, 14 A.L.R.2d 594.

19. N.Y.C.P.A. §§ 49(7), 48; Schmidt v. Merchants Despatch Transp. Co., 270 N.Y. 287, 200 N.E. 824, 104 A.L.R. 450; Pollack v. Warner Bros. Pictures, Inc., 266 App.Div. 118, 41 N.Y.S.2d 225.

20. N.Y.C.P.A. § 44.

21. See Seaman v. Clarke, 60 App.Div. 416, 69 N.Y.S. 1002.

change the date of accrual "until the discovery by the plaintiff, or the person under whom he claims, of the facts constituting the fraud." [22] In the second count of their complaint, plaintiffs allege that the "acts and transactions complained of also constitute a fraud practiced by the defendant upon Alton and the holders of Alton Bonds, including the plaintiffs" and the "facts constituting said fraud were not discovered by the plaintiffs or any of them until long after the institution of the Reorganization Proceeding."

Such "allegations of the complaint" may well be "mere conclusions and even if accepted as allegations of fact they are only incidental to the cause of action brought against the defendants on the ground that they have disregarded their duty to the corporation. Such allegations do not constitute a cause of action 'to procure a judgment on the ground of fraud' * * * under the provisions of section 48, subdivision 5, of the Civil Practice Act, * * *." [23] Moreover there is no indication that proof of the fraud which is merely alleged as such without more, would be essential to plaintiffs' right to recover, [24] or that the fraud thus alleged is merely constructive rather than in the nature of the common law action of deceit, [25] or that the circumstances were not "such as to suggest to a person of ordinary intelligence the probability that he has been defrauded" during the period of defendant's control of Alton. [26]

Accordingly, whatever period of limitation is governing, it does not appear to commence later than November 25, 1942, when defendant's control of Alton ceased.

## II

The second question of what particular period is applicable involves also the consideration whether such period is tolled by the pendency of reorganization proceedings between 1942 and 1947. As the New York court observed, per Lehman, J., in Schmidt v. Merchants Despatch Transp. Co., [27] "The single wrongful act which is asserted as the basis of recovery may constitute the breach of a number of obligations of diverse nature and origin. Then it may rest with the plaintiff whether he will assert as the basis of his right to damages the breach of one or more of such obligations; and the single right to recover such damages may then be alleged in different forms, each asserting as a basis of liability the breach of some duty or obligation. Each so-called 'separate and distinct cause of action' becomes in effect a 'count' in the allegation of a single wrong; and whether the statute [of limitations] bars recovery under any count depends upon the nature and origin of the liability asserted in that count."

The troublesome dilemma yet remains: whether a claim is barred if its " 'very gist and essence' ", [28] or its "real gravamen", [29] is beyond the longest period, or whether, on the other hand, every conceivable characterization of the claim must be barred. [30]

22. N.Y.C.P.A. § 48(5).

23. Hastings v. H. M. Byllesby & Co., 293 N.Y. 404 at pages 411–412, 57 N.E.2d 733 at page 737.

24. Laird v. United Shipyards, 2 Cir., 163 F.2d 12, certiorari denied, 332 U.S. 842, 68 S.Ct. 264, 92 L.Ed. 413; Shultz v. Manufacturers & Traders Trust Co., 2 Cir., Id., 128 F.2d 889, certiorari denied, 317 U.S. 674, 63 S.Ct. 79, 87 L.Ed. 541; Pitcher v. Sutton, 238 App.Div. 291, 264 N.Y.S. 488, affirmed, 264 N.Y. 638, 191 N.E. 603.

25. Austrian v. Williams, 2 Cir., 198 F.2d 697, certiorari denied, 344 U.S. 909, 73 S.Ct. 328, 97 L.Ed. 701.

26. Higgins v. Crouse, 147 N.Y. 411 at page 416, 42 N.E. 6, at page 7; Warner v. Republic Steel Corp., D.C.S.D.N.Y., 103 F.Supp. 998 at page 1009.

27. 270 N.Y. 287 at page 299, 200 N.E. 824 at page 826, 104 A.L.R. 450.

28. 270 N.Y. at page 300, 200 N.E. at page 827.

29. Corash v. Texas Co., 264 App.Div. 292, 35 N.Y.S.2d 384.

30. See Warner v. Republic Steel Corp., D.C.S.D.N.Y., 103 F.Supp. 998.

Suggestive analogies are urged by defendant for application of statutes running from November 25, 1942, providing a three-year period for waste or injury to property,[31] or six-year periods for damages based on contract, injury to property or other common law liability.[32] Yet while claims might have been asserted under section 15 of the Stock Corporation Law or section 60(5) of the General Corporation Law, plaintiffs explicitly disclaim their applicability to the complaint. This has more than ordinary significance, since in Buttles v. Smith,[33] relied upon by plaintiffs, it was to precisely such statutory actions that the six-year period of limitations was made to run only from the date of unsatisfied execution and not that of the original wrongful act. Assuming that available remedies at law cannot be patterned to embrace all the ramifications of the complaint, the ten-year equity statute would be applicable running from the time of the acts and transactions complained of.[34] This assumption is supported by the allegations of fraud, albeit constructive and presumably equitable, in the second count of the complaint.

Remaining is the matter of suspension of such ten-year period. We have already pointed out that the fraud allegation would not shift the commencement of running beyond November, 1942. Nor would the allegation that defendant dominated the Alton until November, 1942, have any different effect.[35] In a number of statutory provisions explicitly dealing with suspension,[36] only one appears in point, viz., "Where the commencement of an action has been stayed by injunction or other order of a court or judge".[37] The terms of the restraining order, entered by the district court in the reorganization proceedings, alleged in paragraph 8 of the complaint, enjoins interference with "assets  *  * choses in action  *  *  * belonging to, or in the possession of the Debtor,  *  * or from continuing any pending suits against the Debtor, or from bringing any new suits or proceedings against the Debtor on causes of action accruing prior to this date in or before any Court  *  *  *."

The instant claim although asserting "causes of action accruing prior to" the date of the order, is not one "against the Debtor," and consequently outside the ambit of such order. It is questionable whether assertion of the present claim by plaintiffs against the defendant herein during pendency of the reorganization proceedings would have amounted to interference with "assets" or "choses in action" of Alton within the contemplation of the order. But if it did, it is clear that "the commencement of an action" identical with the instant claim by either the Alton or its trustee was not enjoined. It is clear that it is the enforceability of the right sued upon, and not the party asserting such right, which determines the period during which the statute of limitations continues to run.[38]

31. N.Y.C.P.A. §§ 48(8), 49(7); Coane v. American Distilling Co., 298 N.Y. 197, 81 N.E.2d 87; Gottfried v. Gottfried, 269 App.Div. 413, 56 N.Y.S.2d 50; Corash v. Texas Co., 264 App.Div. 292, 35 N.Y.S. 2d 334; Austin v. Gardner, 267 App.Div. 863, 46 N.Y.S.2d 521.

32. N.Y.C.P.A. § 48(1), (7) and (8). See Potter v. Walker, 276 N.Y. 15, 11 N.E.2d 335; Dunlop's Sons Inc. v. Spurr, 285 N.Y. 333, 34 N.E.2d 344.

33. Supra note 14.

34. N.Y.C.P.A. § 53.

35. Pollack v. Warner Bros. Pictures, Inc., 266 App.Div. 118, 41 N.Y.S.2d 225; Austrian v. Williams, 2 Cir., 198 F.2d 697, certiorari denied, 344 U.S. 909, 73 S.Ct. 328, 97 L.Ed. 701.

36. N.Y.C.P.A. §§ 17 to 27.

37. Id. § 24.

38. See Bucklin v. Bucklin, 1 Abb.Dec. 242 at page 251; Peters v. Delaplaine, 49 N.Y. 362 at page 368; Cooley v. Lobdell, 153 N.Y. 596, at pages 602–603, 47 N.E. 783; Mason v. Henry, 152 N.Y. 529, 46 N.E. 837; Hastings v. H. M. Byllesby & Co., 293 N.Y. 404, 57 N.E.2d 733.

The instant suit was commenced on May 7, 1952. Accordingly, that part of plaintiffs' claim based upon acts and transactions which occurred more than ten years before the date of commencement of this action are barred.

Motion for summary judgment granted in part.

Judgment accordingly.